UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABIGAIL CARMICHAEL JORDAN,<br><br>        Plaintiff,<br><br>  v.<br><br>ANTONY BLINKEN,<br>Secretary of State, et al.,<br><br>        Defendants. | Civil Action No. 24-1844 (TNM) |

**OFFICIAL CAPACITY DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY INJUNCTION MOTION TO COMPEL THE ISSUANCE OF A PASSPORT AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Antony J. Blinken, in his official capacity as Secretary of State, and Paul Peek, in his official capacity as Director of Passport Adjudication, and the United States (collectively, "Official Capacity Defendants"),[1] respectfully file this opposition to the "Immediate Emergency Injunction Motion to Compel the Issuance of a Passport" (ECF No. 3, "Mot.") filed by Plaintiff Abigail Carmichael Jordan's ("Plaintiff"). The Official Capacity Defendants also move to dismiss the claims made against them in Plaintiff's Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

---

[1]     Plaintiff also has named Peek in his private capacity as an alleged constitutional tortfeasor and unknown "Passport Agent(s) whose pseudonym is 'Customer Service Department', in their private capacity as tortfeasor[,]" where again Plaintiff identifies a supposed constitutional basis for her claims. Compl. at 1–3. The undersigned presently does not represent any defendants in their individual capacities, including as to the alleged constitutional tort claims Plaintiff appears to bring in this suit.

## BACKGROUND

Plaintiff filed (but did not timely serve) her complaint on June 26, 2024, alleging that she has twice applied for a United States passport, but her applications have been denied. She claims to have submitted supporting documentation with her applications that shows her nationality and citizenship, and that she is therefore legally entitled to the issuance of a passport. Compl. at 1-2. Plaintiff claims to have been born in Virginia on November 7, 1998, to parents who are United States Citizens, David and Leslie Carmichael. Compl. at 3-4.

Plaintiff alleges that she first applied for a passport on or about April 4, 2019, with documentation showing she was a natural born citizen or national of the United States. *Id.* at 4. She could not provide a birth certificate and asked for an accommodation on religious grounds. *Id.* With the complaint, Plaintiff submitted a declaration from her father, who explains that it was "made sure that there was no birth certificate for [Plaintiff] so that there would not be any enumeration at birth." *Id.* The declaration of the father also stated that the family does not participate in Social Security or the issuance of its numbers for religious reasons. *Id.* Plaintiff also states that she does not "participate in Social Security or identify with its numbers for reasons of sincere and bona fide religion." Letter of Apr. 4, 2019, ECF No. 1-2 at 38.

The Department of State ("Department") informed Plaintiff that she had submitted insufficient evidence of United States citizenship or nationality and requested additional information to establish entitlement to a U.S. passport pursuant to 22 C.F.R. § 51.45. *See* Letter of Apr. 12, 2019, ECF No. 1-2 at 36. The letter asked Plaintiff for additional information and stated:

> The evidence of U.S. citizenship or nationality you submitted is not acceptable for passport purposes for the following reason(s):
>
> - A statement from the appropriate state registrar of records certifying that there is no birth record on file did not accompany the evidence.

Plaintiff was directed to submit the additional information within ninety days. *Id*. This first passport application was thereafter denied on October 22, 2019, due to Plaintiff's failure to provide the requested information. Compl. at 7; *See* Letter of Oct. 22, 2019, ECF No. 1-2 at 35. Plaintiff was informed that she could reapply for a passport. *Id*.

Plaintiff made a second application on or about September 15, 2022. Compl. at 7. Plaintiff thereafter received a second letter from the Department, dated November 9, 2022, again informing her that "[a] statement from the appropriate state registrar of records certifying that there is no birth record on file did not accompany the evidence." Compl. at 8; *See* Letter of Nov. 9, 2022, ECF No. 1-2 at 49. This was followed by another letter dated January 4, 2023, requesting that Plaintiff send the no birth record statement. Compl. at 10; *See* Letter of Jan. 4, 2023, ECF No. 1-2 at 67. This second application was denied on or about April 22, 2023. Compl. at 12; *See* Letter of Apr. 22, 2023, ECF No. 1-2 at 70. Plaintiff was again informed that she could reapply for a passport.

Plaintiff thereafter filed her complaint more than fourteen months later, alleging in her first cause of action injury to her rights of "religion, travel, liberty and due process in violation of the First, Fourth, Fifth and Ninth Amendments to the United States Constitution." Compl. at 19. Her second cause of action claims that 22 C.F.R. § 51.65(b) is unconstitutional and violates the First, Fourth, Fifth and Ninth Amendments. *Id*. at 19-20. Plaintiff's third cause of action claims she has been denied the rights or privileges of a U.S. national under 8 U.S.C. § 1503 and is being unlawfully detained within the borders of the United States in violation of the foregoing amendments. *Id.* at 20-21.

On the same date she filed her complaint, Plaintiff filed a motion for emergency injunction to compel the issuance of a passport. Mot., ECF No. 3.[2] In her motion, Plaintiff claims that the exhibits submitted with her complaint show that she is eligible for a passport and requests that this Court immediately compel the issuance of a passport. As explained below, Plaintiff's request for injunctive relief should be denied and her complaint should be dismissed.

## APPLICABLE LAW AND REGULATIONS

The following laws and regulations govern the issuance of passports and are applicable here. A passport may be issued only to a U.S. national and only to persons owing allegiance to the United States. 22 C.F.R. § 51.2(a); 22 U.S.C. § 212. The applicant for a passport "has the burden of proving that he or she is a U.S. citizen or non-citizen national" (22 C.F.R. § 51.40), and "must provide documentary evidence that he or she is a U.S. citizen or non-citizen national." (22 C.F.R. § 51.41).

22 C.F.R. § 51.42 applies to persons born in the United States applying for a passport for the first time:

(a) Primary evidence of birth in the United States. A person born in the United States generally must submit a birth certificate. The birth certificate must show the full name of the applicant, the applicant's place and date of birth, the full name of the parent(s), and must be signed by the official custodian of birth records, bear the seal of the issuing office, and show a filing date within one year of the date of birth.

(b) Secondary evidence of birth in the United States. If the applicant cannot submit a birth certificate that meets the requirement of paragraph (a) of this section, he or she must submit secondary evidence sufficient to establish to the satisfaction of the Department that he or she was born in the United States. Secondary evidence includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5

---

[2]    Defendants were never served with this motion, which did not accompany the complaint service package that was served on October 28, 2024.

years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth.

Pursuant to 22 C.F.R. § 51.45, the Department has discretion to require additional evidence of U.S. citizenship: "The Department may require an applicant to provide any evidence that it deems necessary to establish that he or she is a U.S. citizen or non-citizen national, including evidence in addition to the evidence specified in 22 CFR 51.42 through 51.44."

According to 22 C.F.R. § 51.65:

(a) The Department will send notice in writing to any person whose application for issuance of a passport . . . has been denied. . . . The notification will set forth the specific reasons for the denial, revocation or cancellation and, if applicable, the procedures for review available under 22 CFR 51.70 through 51.74.

(b) An application for a passport . . . will be denied if an applicant fails to meet his or her burden of proof under the applicable regulations or otherwise does not provide documentation sufficient to establish entitlement to a passport . . . within the time provided in the notification by the Department that additional information is required. Thereafter, if an applicant wishes the Department to adjudicate his or her claim of entitlement to a passport . . . he or she must submit a new application, supporting documents, and photograph, along with all applicable fees.

A "passport" is defined as a "travel document issued by a competent authority showing the bearer's origin, identity, and nationality if any, which is valid for the admission of the bearer into a foreign country." 8 U.S.C. § 1101(a)(30). Under this authority, the Secretary of State "may grant and issue passports" after considering "a written application" that meets certain criteria established by law. *See* 22 U.S.C. §§ 211a, 213. In particular, "[a] passport may be issued only to a U.S. national." 22 C.F.R. § 51.2.

Thus, under the foregoing applicable regulations, the applicant bears the burden of proving that he or she is a U.S. citizen via evidence and documentation requested by the Department. 22 C.F.R. §§ 51.40, 51.41. For a person born in the United States applying for a passport for the first time, a birth certificate serves as primary evidence. *Id*. § 51.42(a). Under section 51.42(a),

an acceptable birth certificate must include the full name of the applicant, the applicant's place and date of birth, and the full name of the parent(s). Thus, a birth certificate establishes a person's identity, citizenship, and kinship to one's parents. If a birth certificate does not exist, the applicant must submit a "letter of no record" certification from the official custodian of vital records in the U.S. state where the birth reportedly occurred. 8 FAM 303.2-4(A)(b). Additionally, secondary evidence must be provided to establish to the satisfaction of the Department that he or she was born in the United States (*id*. § 51.42(b)), and the Department has the discretion to require additional evidence in support of an application. *Id*. § 51.45; *see also* 22 C.F.R. § 51.23(c) ("The Department may require such additional evidence of identity as it deems necessary.").

In this case, Plaintiff did not provide a birth certificate and claims that she does not have a birth certificate because "[f]or reasons of religion, [her] father did everything he could to ensure that a birth certificate was not issued for [Plaintiff]. It was to ensure that [Plaintiff] was not enumerated at birth by a Social Security Number." Compl. ¶ 40. Thus, Plaintiff does not claim that her religion forbids having a birth certificate, but rather a Social Security number. In response to Plaintiff's claim, the Department requested Plaintiff to provide a statement from the appropriate state registrar of records certifying that there is no birth record on file for her. *See* Letter of Apr. 12, 2019, ECF No. 1-2 at 36; Letter of Nov. 9, 2022, ECF No. 1-2 at 49. The Department provided specific instruction on how to obtain a birth record and noted that "[i]f no formal birth record exists, you will receive a letter from the state registrar that will certify a search was made and no record was found." *Id.* However, Plaintiff failed to provide said letter requested by the Department and her passport applications thereafter were denied.

A request for vital records does not require Plaintiff to register her birth with the Virginia Department of Health. *See* https://www.vdh.virginia.gov/vital-records/applications-for-a-vital-

record ("[t]he Code of Virginia requires a cost of $12.00 per certificate search.  There is no refund

if the certificate is not found").  Thus, a request for vital record does not require registration of

one's birth or the issuance of a Social Security number.  *See also* Form VS6B (Virginia Department

of Health, Application for Certification of a Birth Record), available at:  https://www.vdh.

virginia.gov/content/uploads/sites/93/2020/07/VS6B_Birth-application.pdf    (noting on the top

that a fee of $12 is charged for each certification of a vital record or for a search of the files).

<strong>STANDARD OF REVIEW</strong>

**I.**    <u>**Preliminary Injunction Standard**</u>

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded

as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations omitted). A party seeking a

preliminary injunction must establish (1) a likelihood of success on the merits; (2) a likelihood of

irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its

favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, Inc.,

555 U.S. 7, 22 (2008); *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 185 (D.D.C.

2015).  Accordingly, preliminary injunctions "should be granted only when the party seeking the

relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258

(D.C. Cir. 2004) (citation omitted).

Because the basic function of a preliminary injunction is to preserve the status quo pending

a determination of the action on the merits, *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir.

1968) ("The power to issue a preliminary injunction, especially a mandatory one, should be

sparingly exercised." (cleaned up)), courts generally require a movant to meet a higher degree of

scrutiny where the movant seeks to alter rather than maintain the status quo, or where issuance of

the injunction will provide the movant with substantially all of the relief that would be available

after a trial on the merits*, see, e.g., Allina Health Servs. v. Sebelius*, 756 F. Supp. 2d 61, 69–70

(D.D.C. 2010) (noting how "courts have held the movant for a mandatory injunction to a higher burden").

## II.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (cleaned up; quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001)).

## III.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, the plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In satisfying this requirement that it "state a claim to relief that is plausible on its face," *id*. at 570, a complaint cannot survive a motion to dismiss through only "a formulaic recitation of the elements of a cause of action." *Id.* at 555. As with facial challenges to subject matter jurisdiction under Rule 12(b)(1), a district court is required to deem the factual allegations in the complaint as true and consider those allegations in the light most favorable to the non-moving party when evaluating a motion to dismiss under

Rule 12(b)(6).  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006).  But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."  *Twombly*, 550 U.S. at 557.  Accordingly, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

## I.    Plaintiff Is Not Entitled to Injunctive Relief

The Court should deny Plaintiff's motion because she cannot satisfy the requirements for injunctive relief.

### A.    Plaintiff Has No Likelihood of Success on the Merits of Her Claims.

#### 1.    Plaintiff's Claims Under the First, Fourth, Fifth, and Ninth Amendments

Plaintiff claims that the Department's failure to issue a U.S. passport and the denial of an appeal caused her "continued unlawful detention" and injured her "rights of religion, travel, liberty and due process in violation of the First, Fourth, Fifth, and Ninth Amendments." Compl. ¶¶ 49, 50.

Although Plaintiff cites to the First Amendment as a source of the right to travel, she offers no explanation as to how the First Amendment is implicated here. The denial of Plaintiff's passport application "does not result from any expression or association on [one's] part; [one] is not being forced to choose between membership in an organization and freedom to travel." *Zemel v. Rusk*, 381 U.S. 1 (1965).  Further, Plaintiff's reliance in her motion on *Aptheker v. Secretary of State*, 378 U.S. 500 (1964), as support for her claim of infringement of her right to travel is misplaced. *Aptheker* involved the constitutionality of the Subversive Activities Control Act of 1964, which made it unlawful for members of Communist organizations to apply for passports.  Plaintiff here

is not being denied the right to travel due to her membership in an organization or group; she is being asked to provide information, as applicable regulations provide, to establish her identity and that she was born in the United States, and then may obtain a passport that will allow her to travel.

Second, Plaintiff's freedom of religion is not being injured. As explained in her complaint, Plaintiff's religious beliefs prevent her from obtaining a Social Security number. Compl. at ¶ 40. That is why her father made sure there was no birth certificate issued: "For reasons of religion, my father did everything he could to ensure that a birth certificate was not issued for me. It was to ensure that I was not enumerated at birth by a Social Security Number[.]" *Id.*[3]

Here, the Department is not requiring that Plaintiff obtain and produce a birth certificate or that she provide a Social Security number in order to obtain a passport. The Department is merely requesting proof of identity and citizenship pursuant to 22 C.F.R. § 51.45 and that Plaintiff provide a statement from the Virginia Department of Health, Office of Vital Records, that there is no birth record for her on file. This request in no way interferes with Plaintiff's religious beliefs that prevent her from obtaining a Social Security number. Therefore, Plaintiff has no cognizable First Amendment claim.

It is unclear whether Plaintiff is making a claim under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA"), but she mentions the Act it in her jurisdictional statement and in her claim for relief. Compl. at 3, 21. Plaintiffs bear the initial burden of establishing the elements

---

[3]    This case is different from a prior case concerning her father, David Alan Carmichael, which Plaintiff cites in her complaint (Compl. ¶ 40), and in her motion (Mot. ¶ 7). That case, *Carmichael v. Blinken*, 486 F. Supp. 3d 360 (D.D.C. 2020), involved a claim of religious accommodation under RFRA and the Department's requirement that he provide a Social Security number on his passport renewal application. That case is in apposite because here there is no request for a religious accommodation pertaining to a Social Security number as the Department is merely requesting that Plaintiff provide a letter from the Commonwealth of Virginia confirming that she was not issued a birth certificate.

of a prima facie case of a RFRA violation; once a prima facie case has been established, the government bears the burden of showing a compelling interest and that it used the least restrictive means to carry out that interest.  *See Holt v. Hobbs*, 574 U.S. 352, 361 (2015).

 "To successfully mount a RFRA challenge and subject government action to strict scrutiny, a plaintiff must meet the initial hurdle of establishing that the government has substantially burdened his religious exercise."  *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 281 F. Supp. 3d 88, 113 (D.D.C. 2017); *see Kaemmerling v. Lappin*, 553 F.3d 669, 677-78 (D.C. Cir. 2008) (holding that the plaintiff failed to "state a substantial burden on his religious exercise" because he did not identify any action or practice that would have been burdened by the government's collection of DNA); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 428 (2006) (plaintiff carries the initial burden of showing a prima facie RFRA case).  "Only if that predicate has been established will the onus then shift to the government to show that the law or regulation is the least restrictive means to further a compelling interest."  *Archdiocese of Wash.*, 281 F. Supp. 3d at 113.  "A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Id*.

Whether a law substantially burdens religious exercise under RFRA is a question of law for courts to decide, not a question of fact.  *See Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011) (observing that judicial inquiry into the substantiality of the burden "prevent[s] RFRA claims from being reduced into questions of fact, proven by the credibility of the claimant"); *Kaemmerling*, 553 F.3d at 679 ("[a]ccepting as true the factual allegations that Kaemmerling's beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that his religious exercise is substantially burdened").  A desire to have the government

conduct its affairs in conformance with a plaintiff's religious beliefs does not suffice to establish a prima facie violation. *Kaemmerling,* 553 F.3d at 680.

Here, the factual allegations in the complaint are insufficient to show that the Department has substantially burdened the exercise of Plaintiff's religious beliefs. Specifically, the Department's request that Plaintiff provide documentation from Virginia that no birth certificate has been issued in no way places a substantial burden on Plaintiff's religious exercise. Thus, Plaintiff has not shown any likelihood of success on any claims of infringement on her religious beliefs, whether they are made under the First Amendment or RFRA.

Plaintiff also has no claim under the Fourth Amendment, which is a legal challenge to government action that constitutes an unreasonable search and seizure. Plaintiff has not been subject to an unreasonable search and seizure. She is merely being asked to provide requested information to issue her a passport, which is clearly a matter within the Department's purview per the above noted statutes and regulations.

Plaintiff also has no cognizable Ninth Amendment claim. The Ninth Amendment is not an independent source of constitutional rights. Courts in this District repeatedly have concluded that the Ninth Amendment "is a rule of construction, not a substantive basis for a civil rights claim." *Rynn v. Jaffe,* 457 F. Supp. 2d 22, 26 (D.D.C. 2006); *see also Marshall v. Reno,* 915 F. Supp. 426, 428 (D.D.C. 1996); *Robinson v. Pilgram,* Civ. A. No. 20-2965 (GMH), 2021 WL 5987016 at *8 (D.D.C. Dec. 17, 2021); *Patterson v. Harris*, Civ. A. No. 21-3339 (RDM), 2023 WL 346096 at *10 (D.D.C. Jan. 20, 2023).

Additionally, Plaintiff raises a due process claim under the Fifth Amendment. Compl. at 19, 20, 21. The Fifth Amendment's "due process guarantee has both procedural and substantive components." *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't,* 319 F. Supp. 3d

491, 499 (D.D.C. 2018).  However, Plaintiff does not indicate in her complaint whether the denial of the passport applications constitutes a violation of procedural or substantive due process.

"Under procedural due process, the government is required to provide individuals with certain procedural rights before it may deprive them of life, liberty, or property." *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 275 n.11 (D.D.C. 2011) (citing *Mathews*, 424 U.S. at 332–33); *see also Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner."). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).  In this case, in adjudicating Plaintiff's passport applications, the Department provided Plaintiff multiple opportunities to provide additional requested documentation.  However, Plaintiff did not comply with the requests, which resulted in the Department providing Plaintiff with written notifications denying her passport applications and instructing her that she could reapply.

Further, an individual has no right, clear or otherwise, to be issued a U.S. passport – and the Department has no duty to issue one—unless an applicant complies with the controlling laws, rules and regulations and establishes that she meets the requirements, which Plaintiff has failed to do in this case.  The right to hold a passport is subordinate to national security and foreign policy considerations; as such, it is subject to reasonable governmental regulation.  *Alsaidi v. Dep't of State*, 292 F. Supp. 3d 320, 327 (D.D.C. 2018); *Haig v. Agee*, 453 U.S. 280, 306 (1981).  While "passports are issued to all law-abiding American citizens who apply for them and comply with the rules prescribed . . . it is not obligatory to issue one to every citizen who desires it," and "everyone who applies for a passport is required to present proof of identity and citizenship."

*Alsaidi*, 292 F. Supp. 3d at 327 (internal citations omitted).  The Department afforded Plaintiff a meaningful opportunity to provide requested documentation and to contest the Department's refusal to issue a passport.  Therefore, Plaintiff has failed to demonstrate that the Department's action did not comport with procedural due process.

"Substantive due process bars government interference with certain fundamental rights 'regardless of the fairness of the procedures used to implement them.'" *Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 499 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "There are two strands of the substantive due process doctrine." *Id.* (citation and internal quotation marks omitted). "The first strand protects rights that are 'fundamental,' whereas the second 'protects against the exercise of governmental power that shocks the conscience.'" *Id.* (citation omitted); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (explaining that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level").

It appears that Plaintiff is invoking the "fundamental" rights strand of substantive due process and not the "shocks the conscience" strand.  However, a right to international travel is not equivalent to the fundamental right of interstate travel. *See, e.g.*, *Haig,* 453 U.S. at 306–07; *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001) ("Plaintiff's right to a passport and to travel internationally, while a liberty interest protected by the Due Process Clause of the Fifth Amendment, is not a fundamental right equivalent to the right to interstate travel.").  As the D.C. Circuit has explained, "international travel is no more than an aspect of liberty that is subject to reasonable government regulation within the bounds of due process, whereas interstate travel is a fundamental right subject to a more exacting standard." *Hutchins v. District of Columbia*, 188 F.3d

531, 537 (D.C. Cir. 1999) (citing *Haig*, 453 U.S. at 306–07).  Thus, as a matter of law, the right to international travel is not a fundamental one. *Haig*, 453 U.S. at 306-07.

On the current record, the Department's request for additional documentation does not run afoul of due process, given that the Department may request additional evidence for proof of citizenship. *See, e.g.*, 22 C.F.R. §§ 51.45, 51.23(c). After reviewing Plaintiff's submissions and passport applications, the Department determined that Plaintiff failed to present satisfactory documentation for the issuance of a passport and requested additional information.  Thus, to the extent Plaintiff asserts a violation of substantive due process, she has not established that the government infringed on a fundamental right by requesting additional information.

Plaintiff has not been deprived of a fundamental right, and the issuance of a passport is an area subject to reasonable government regulation.  Nonetheless, Plaintiff merely has to provide the requested documentation in order to obtain a passport for international travel, and the Department clearly has the authority to request the information it deems necessary in order to issue Plaintiff a passport.  Thus, Plaintiff has no likelihood of success on her due process claim in her first cause of action.

2.     Plaintiff's Claim that 22 C.F.R. § 51.65(b) is Unconstitutional is Meritless

In her second cause of action, Plaintiff claims that 22 C.F.R. § 51.65(b) is unconstitutional, asserting that the regulation is overly broad and injures her "rights of religion, travel, liberty and due process in violation of the First, Fourth, Fifth, and Ninth Amendments to the United States Constitution."  Compl. ¶ 51.  Plaintiff is incorrect for the same reasons stated above.  22 C.F.R. § 51.65(b) merely assigns a burden of proof to establish entitlement to a passport:

> An application for a passport . . . will be denied if an applicant fails to meet his or her burden of proof under the applicable regulations or otherwise does not provide documentation sufficient to establish entitlement to a passport . . . or does not provide additional information as requested by the Department within the time

provided in the notification by the Department that additional information is required.

*Id.*  The issuance of passports is a matter clearly within the purview of the Department, and § 51.65(b), along with 22 C.F.R. § 51.45, requires documentation sufficient to establish that a person is entitled to a passport.  Plaintiff has been instructed several times by the Department to provide requested documentation from the Commonwealth of Virginia but has failed to do so. Plaintiff has submitted no authority, in her complaint or in her motion, that would in any way establish that this regulation is an unconstitutional exercise of government authority.  Rather, the issuance of passports is an essential government function, as set forth in the regulations and the case law.

The Passport Act of 1926, 22 U.S.C. § 211a, permits the Secretary of State or a designee to "grant and issue passports, and cause passports to be granted, issued and verified in foreign countries . . . under such rules as the President shall designate and prescribe for and on behalf of the United States, and no other person shall grant, issue, or verify such passports."  *Id.*  Further, pursuant to Executive Order No. 11,295, 31 Fed. Reg. 10,603 (Aug. 9, 1966), the President has empowered the Secretary of State with the authority "to designate and prescribe for and on behalf of the United States rules governing the granting, issuing, and verifying of passports."  The use of the term "verifying" in addition to the terms "granting" and "issuing" in Executive Order No. 11,295 (and the latter half of section 211a) recognizes the Secretary's inherent authority to deny the issuance of passports.  The Supreme Court has also acknowledged this authority:

> The Passport Act does not in so many words confer upon the Secretary a power to revoke a passport.  Nor, for that matter, does it expressly authorize denials of passport applications.  Neither, however, does any statute expressly limit those powers.  It is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes . . . .  [I]f the Secretary may deny a passport application for a certain reason, he may revoke a passport on the same ground.

*Haig*, 453 U.S. at 290-91.

The Supreme Court also has noted that this "has been the Secretary's consistent construction" of his authority. *Id*. at 291 n.20. The Court went on to explain that "[p]articularly in light of the 'broad rule-making authority granted in the [Passport Act of 1926],' a consistent administrative construction of that statute must be followed by the courts 'unless there are compelling indications that it is wrong.'" *Id*. at 291 (quoting *E.I. du Pont de Nemours & Co. v. Collins*, 432 U.S. 46, 55 (1977)).

Moreover, in enforcing 22 C.F.R. §§ 51.60 and 51.70, and the other regulations mentioned above, the Department also has provided the due process required by the Fifth Amendment. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what due process requires in a given situation, the Supreme Court requires balancing the Government interest, the private interest at stake, and the risk of an erroneous deprivation of those private interests. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the government has a substantial interest in the proper issuance of passports, and Plaintiff has been requested to provide additional information in support of her passport applications, a matter clearly within the Department's applicable authority. Accordingly, 22 C.F.R. § 51.65(b) is not unconstitutional.

3.    Plaintiff's 8 U.S.C. § 1503 Claim Cannot be Heard in this Court

Plaintiff also raises a claim under 8 U.S.C. § 1503(a) by claiming that she was denied a right and privilege as a national of the United States when the Department refused to issue her a passport. Compl. at 20. This statute allows a plaintiff within the United States who is denied a privilege as a United States national, such as the issuance of a passport, to bring a declaratory judgment action under 28 U.S.C. § 2201. However, since Plaintiff is seeking de novo review of the denial of her passport applications, she cannot do so in this Court. Section 1503(a) requires

- 17 -

that the action "be filed in the district court of the United States for the district in which such person resides or claims a residence." In this case, Plaintiff resides in Hampton, Virginia, which is part of the Eastern District of Virginia, Newport News Division. Since Plaintiff resides in Virginia, not in the District of Columbia, the federal court in Virginia is the proper venue for a claim under section 1503, and the claim accordingly cannot be maintained here. *Xia v. Tillerson*, 865 F.3d 643, 655-656 (D.C. Cir. 2017).

   4.    Plaintiff Has no Likelihood of Success on an APA or Mandamus Claim

Plaintiff's complaint also cites the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and requests that the Court compel the issuance of a passport, and she additionally requests mandamus. Compl. at 3 and 22.

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. In *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988), the Supreme Court interpreted section 704 as precluding APA review where Congress has otherwise provided a "special and adequate review procedure." *Id*. at 904 (internal quotations omitted). An alternative remedy will not be adequate under section 704 if the remedy offers only "doubtful and limited relief." *Id*. at 901. This court has concluded that the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the "same genre." *El Rio Santa Cruz Neighborhood Health Ctr. v. Dep't of Health & Hum. Servs.,* 396 F.3d 1265, 1272 (D.C. Cir. 2005). Thus, for example, relief will be deemed adequate "where a statute affords an opportunity for de novo district-court review" of the agency action. *Id.* at 1270. In such cases, the court has reasoned that "Congress did not intend to permit a litigant challenging an administrative denial to utilize simultaneously both the review provision and the APA." *Id*. at 1270 (cleaned up; quoting *Env't Def. Fund v. Reilly*, 909 F.2d 1497, 1501 (D.C. Cir. 1990)).

Here, Plaintiff is pursuing a claim under 8 U.S.C. § 1503(a) and is, therefore, seeking de novo review of her passport denials. This statute provides Plaintiff an adequate remedy at law, and therefore Plaintiff cannot pursue an APA or mandamus claim. *Garcia v. Vilsack*, 563 F. 3d 519, 522-523 (D.C. Cir. 2009). Again, however, Plaintiff must pursue her section 1503 claim in Virginia.

### B.    Plaintiff Fails to Demonstrate Immediate Irreparable Harm.

A party moving for a preliminary injunction must demonstrate that he or she is "likely to suffer irreparable harm in the absence of preliminary relief." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014); *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) ("The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies" (cleaned up)); *see, e.g., 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd*., 280 F. Supp. 3d 118, 122 (D.D.C. 2017) (applying *Wis. Gas*). A court may not issue "a preliminary injunction based only on a possibility of irreparable harm . . . [since] injunctive relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). If a party makes no showing of imminent irreparable injury, the Court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Wis. Gas*, 758 F.2d at 674 (explaining that because movants could not establish irreparable harm, the court need not address any of the other applicable factors).

First, the denial of Plaintiff's second passport application occurred on April 22, 2023. Plaintiff filed her complaint on June 26, 2024 (ECF No. 1), more than fourteen months later, summonses were not issued until almost two months after the complaint was filed (ECF No. 8),

and service was not made until October 28, 2024 (ECF No. 10), with the Official Capacity Defendants' answer not due until December 27, 2024.  Thus, as demonstrated by Plaintiff's own actions, this is not a matter of urgency that demands immediate injunctive relief from this Court.

In her complaint, Plaintiff contends that she is suffering harm because she and her husband "were prevented from traveling to Viet Nam in or about January 2023" and "[they] are continually, and unlawfully, chained until the passport is issued."  But such historical harm is no basis for present injunctive relief, nor is an inchoate hope for international travel at some indeterminate future point.  As such, Plaintiff makes no showing of imminent irreparable injury and fails to demonstrate that she is likely to suffer irreparable harm in the absence of injunctive relief.   On this basis alone, Plaintiff's motion should be denied.  Further, any potential future harm will be avoided if Plaintiff provides the documentation requested by the Department, which does not implicate her religious beliefs.

### C.    The Balance of Equities and the Public Interest Mitigate Against Injunctive Relief.

The final two factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—merge when the federal government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312–13 (1982).

Here, the balance of equities and the public interest heavily favor the government. Congress has explicitly charged the Secretary of State with the sole authority to grant and issue passports. 22 U.S.C. § 211a.  Moreover, Congress explicitly provided that no passport shall be granted or issued for any other person other than a United States citizen or a national. 22 U.S.C.

§ 212.  An individual applying for a U.S. passport has the burden of proving through documentary evidence her U.S. citizenship or nationality.  22 C.F.R. §§ 51.40; 51.41.

In *Haig*, 453 U.S. 280, the Supreme Court explained that 22 U.S.C. § 211a involves the areas of foreign policy and national security and opined that:

> A passport is, in a sense, a letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer. . . . A passport is a document, which, from its nature and object, is addressed to foreign powers; purporting only to be a request, that the bearer of it may pass safely and freely; and is to be considered rather in the character of a political document, by which the bearer is recognized in foreign countries, as an American citizen; and which, by usage and the law of nations, is received as evidence of the fact. . . . As a travel control document, a passport is both proof of identity and proof of allegiance to the United States.  Even under a travel control statute, however, a passport remains in a sense a document by which the Government vouches for the bearer and for his conduct.

*Id*. at 292-93 (internal citations omitted).

An injunction against the Official Capacity Defendants would be contrary to the public interest. If this Court were to set aside the requirement that an applicant for a passport has to establish entitlement to a passport by presenting proof of identity and citizenship as requested by the Department and allowed by law and regulations, the negative repercussions for the public would be great and irreversible.  *See id.*  Thus, the balance of the equities weighs decisively against entry of a preliminary injunction.  Again, Plaintiff here is merely asked to provide documentation from the Commonwealth of Virginia that she has no birth certificate.

Based on the foregoing, Plaintiff's motion for injunctive relief should be denied.[4]

---

[4]     Additionally, because Plaintiff's individual capacity claims can only seek money damages under *Bivens*, they also cannot serve as a basis for provisional injunctive relief against the Government or government officials deploying their official authorities.

II.    <u>**Plaintiff's Complaint Should Be Dismissed Against the Official Capacity Defendants**</u>

Based on the foregoing argument in opposition to the motion for injunctive relief, Plaintiff's complaint should likewise be dismissed against the Official Capacity Defendants, and the Department incorporates the above arguments. Plaintiff does not state plausible claims for relief as required by *Twombly* and *Iqbal.*

Plaintiff's complaint overlooks the fact that "a passport from its nature and object, is addressed to foreign powers and is to be considered in the character of a political document." *Zivitovsky v. Kerry*, 576 U.S. 1, 30 (2015). Moreover, "a passport's place of birth section [is] an official executive statement implicating recognition." *Id.* The Supreme Court in *Zivitovsky* explained that, in addition to the executive branch, Congress has substantial authority over passports and in so ruling relied on its previous decisions in *Haig*, 453 U.S. 280 and *Kent v. Dulles*, 357 U.S. 115 (1958). *Id.* at 31. *Kent* explained that "[i]t is understood, as matter of practice, that some evidence of citizenship is required, by the Secretary of State, before issuing a passport. This, however, is entirely discretionary with him." 357 U.S. at 120-121.

Plaintiff's complaint overlooks that the issuance of passports, including identifying the place of birth and ensuring that the applicant is a citizen, are powers specifically delegated to the United States and its discretion. Here, Plaintiff wants to compel the Department to accept her evidence and what she chooses to produce, ignoring the fact that Congress has determined that the federal government makes determinations regarding passport eligibility, and can request information it deems necessary to carry out this essential government function.

In her First Cause of Action, Plaintiff claims there were unconstitutional acts committed by a "tortfeasor" within the Department who unlawfully denied her two passport applications. Compl. at 17. She claims the denials have resulted in her "continued unlawful detention injuring

[her] rights of religion, travel, liberty and due process in violation of the First, Fourth, Fifth, and Ninth Amendments to the United States Constitution." Compl. at 19. This is not a plausible claim.

Congress has the power to enact passport legislation of wide scope and has substantial authority over passports. *Zivotofsky*, 576 U.S. at 31; *Haig*, 453 U.S. 280; *Zemel v. Rusk*, 381 U.S. 1 (1965); *Kent v. Dulles*, 357 U.S. 116. In *Kent*, the Supreme Court held that if a person's liberty to travel is regulated through a passport, "it must be pursuant to the law-making functions of the Congress." *Id*. at 129. Later cases, such as *Zemel* and *Haig*, also proceeded on the assumption that Congress must authorize the grounds on which passports may be approved or denied. *See Zemel* at 7–13, 85; *Haig* at 289–306. "This is consistent with the extensive lawmaking power the Constitution vests in Congress over the Nation's foreign affairs." *Zivotofsky*, 576 U.S. at 31.

The laws and regulations discussed above that govern the issuance of passports are clear. A passport may be issued only to a U.S. national and only to persons owing allegiance to the United States. 22 C.F.R. § 51.2(a); 22 U.S.C. § 212. The applicant for a passport "has the burden of proving that he or she is a U.S. citizen or non-citizen national" (22 C.F.R. § 51.40), and "must provide documentary evidence that he or she is a U.S. citizen or non-citizen national (22 C.F.R. § 51.41). Pursuant to 22 C.F.R. § 51.45, the Department has discretion to require additional evidence of U.S. citizenship or non-citizen nationality: "The Department may require an applicant to provide any evidence that it deems necessary to establish that he or she is a U.S. citizen or non-citizen national, including evidence in addition to the evidence specified in 22 CFR 51.42 through 51.44." According to 22 C.F.R. § 51.65(b) an application for a passport will be denied if the applicant "fails to meet his or her burden of proof under the applicable regulations or otherwise does not provide documentation sufficient to establish entitlement to a passport" or "does not

provide additional information as requested by the Department within the time provided in the notification by the Department that additional information is required."

Further, nothing in the regulations indicates that the Department or this Court in a section 1503(a) matter are obligated to abide by Plaintiff's chosen evidence in support of a passport application. Instead, the regulations clearly impose an obligation on the applicant to establish her identity and that she is a U.S. national through the submission of documentary evidence. *See* 22 C.F.R. §§ 51.40, 51.41; *see also* 22 C.F.R. §§ 51.42(a), (b). Moreover, the regulations clearly give the Department the discretion to require evidence beyond that envisioned in 22 C.F.R. §§ 51.42(a), (b). *See* 22 C.F.R. § 51.45. Therefore, Plaintiff's contention that the Department is acting unlawfully and must defer to her evidence of citizenship turns the applicable statutes and regulations on their head and makes the Plaintiff the sole and final arbiter for determining her passport eligibility. Here, Plaintiff has been requested to provide additional information per 22 C.F.R. § 51.45 to ascertain her identity and issue a passport. She has failed to do so and has not met her required burden.

Given that Congress and the Executive branch have exclusive authority over the passport field, Plaintiff cannot demonstrate that Congress intended that her preferred evidence be binding on the Department in determining passport eligibility. Accordingly, Plaintiff cannot show that the Department's denials and the refusal to accept what Plaintiff has offered amount to "unconstitutional acts injuring Plaintiff," or that 22 C.F.R. § 51.65(b) is unconstitutional, as alleged in the first and second causes of action.

Likewise, Plaintiff's third cause of action under 8 U.S.C. § 1503 is not a plausible claim. First, as noted above, venue is not proper in this District. If Plaintiff is seeking de novo review of the denial of her passport applications, she must do so in a United States District Court in Virginia.

Second, Congress and the executive branch have exclusive authority to determine what supporting evidence is required to issue a passport.  Here, as demonstrated by Plaintiff's complaint and her supporting evidence, she has not met her burden to establish her eligibility for a passport.

## CONCLUSION

Based on the foregoing, the Official Capacity Defendants respectfully request that Plaintiff's motion for injunctive relief be denied and that her complaint against them be dismissed. A proposed order is attached.

Dated: December 10, 2024
    Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____*/s/ Thomas W. Duffey*_____
   THOMAS W. DUFFEY
   Assistant United States Attorney
   601 D Street, NW
   Washington, DC 20530
   (202) 252-2520

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon the pro se Plaintiff this 10th day of December, 2024, via first class mail, at the following address on the docket:

ABIGAIL CARMICHAEL JORDAN
1748 Old Buckroe Road
Newport News, VA 23664


*/s/ Thomas W. Duffey*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABIGAIL CARMICHAEL JORDAN,

              Plaintiff,

      v.

ANTONY BLINKEN,
Secretary of State, et al.,

              Defendants.

Civil Action No. 24-1844 (TNM)

**[PROPOSED] ORDER**

This matter, having come before the Court on the Motion of the Plaintiff for an emergency

injunction to compel the issuance of a passport, Defendants' opposition thereto, and Defendants'

motion to dismiss the complaint, and the Court having considered the matter and the record herein,

it is ORDERED that,

1)  Plaintiff's motion for an emergency injunction to compel is denied; and

2)  Defendants' motion to dismiss the complaint is granted.

SO ORDERED.

_____
TREVOR N. McFADDEN
United States District Judge