# UNITED STATES DISTRICT COURT

for the
District of Columbia

RECEIVED
Mail Room

DEC 2 3 2024

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

| | | |
|---|---|---|
| Abigail Carmichael Jordan | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | Case No: 1:24-cv-01844 - TNM |
| v. | ) | |
| | ) | |
| Antony L. Blinken, *et al.,* | ) | |

## PLAINTIFF'S REPLY TO DEFENDANT BRIEF IN OPPOSITION TO MOTION TO COMPEL PASSPORT ISSUANCE

**I.    This is a Timely Reply to Defendant's Brief in Opposition, Separate From a Response to the Defendants' Dispositive Motion**

1.    The Defendants' owed the court a brief in opposition to my immediate emergency motion to compel the issuance of my passport (MINUTE ORDER, November 19, 2024 and ECF 3, Plaintiff's Emergency Motion).  The Defendants in their official capacity filed a brief in opposition in the same memorandum for a motion to dismiss, Opposition to Plaintiff's Emergency Injunction Motion to Compel the Issuance of a Passport and Motion to Dismiss Plaintiff's Complaint (ECFs 17 and 18, Dec. 10, 2024).  My deadline to <u>reply</u> to the Defendants' brief in opposition portion of their motion and memorandum is seven plus three days, December 20, 2024.  The deadline to <u>respond</u> to the Defendants' Rule 12(b)(1) and (6), and Rule 56 motion for summary judgment pursuant to Rule 12(d) is likely December 24, 2024, if not later.  The threshold that I must meet in a reply to my injunction motion is to persuade the Court of the likelihood that I will prevail on the merits.  A response to the Government's dispositive motion has a much higher demand that I cannot meet within the deadline of my obligation for a timely reply to my motion.  Therefore, I am making my timely 'Reply' now, preserving a 'Response' to the government's dispositive motion according to that deadline to 'Respond' to the dispositive

1

motion.

2.    The Court acted upon my motion for pro-bono assistance (ECF 16), and has tasked a lawyer from the assistance pool to contact me.  I have not spoken with him yet due to the labors required to construct a timely reply and due to the demands of my ministry, having to close ministry activities in North Carolina and move back to Virginia by Friday, December 20, 2024.

3.    Due to the urgency of my need for a passport in order to be able to plan for international travel to the Dominican Republic by February, 2025, and the urgency in my need to know if I have a passport as soon as possible, so that I can do emergency fundraising that I cannot do in good faith without first having a passport (Attach. 1, Jordan Declaration):  I am here in my 'reply' addressing the 'likelihood' that I will win on the merits, saving the argument on the merits for a "Response" to the Defendants' dispositive motion to be drafted by the trained professional that is coming to my rescue.

4.    I will have to do my best as an untrained pro se plaintiff to facially address the jurisdiction and venue issues raised in the Defendants' brief in opposition.  I will address those last because the learned Court may see the jurisdiction by inferences before I get there.

## II.    My Citizenship and Identity Is Not Disputed

5.    The Government (Defendants in their official capacity), in their opposition to my immediate emergency motion to compel the issuance of my passport, did not dispute any allegation of mine that I was born in the United States, a natural born United States citizen, child of natural born United States citizen parents (ECF 1, pp. 3 through16, sworn under oath and notarized, p. 24).  The Government did not dispute the validity and verity of the four eye-witness affidavits that I supplied to the government to affirm my identity and my birth in Hampton, Virginia (ECF 1-2, pp. 6, 9, 10, 11).  The Government did not dispute the validity and verity of the Virginia Driver's license that I provided to the government as affirmation of my

identification (ECF 1-2, p. 15). The Government did not dispute the other documents that I

provided in response to their query for more documentation (ECF 1-2, pp. 7, 8, 12, 13, 14). I

am likely to prevail on my claim and be granted the primary relief that I demand, a passport.

> Where defendant did not file response to plaintiff's statement of material facts as
> to which there was no genuine issue, court would assume that defendant admitted
> all facts contained in statement for purposes of ruling upon plaintiff's motion for
> summary judgment. *Fox v. Washington*, 396 F. Supp. 504 (D.D.C., 1975)

## III.   The United States Statutes That Govern Passport Eligibility Support the Likelihood of My Prevailing on the Merits of My Claim

6.    The law expressly says who is <u>ineligible</u> for a passport, "No passport shall be granted

or issued to or verified for any other persons than those owing allegiance, whether citizens or

not, to the United States" 22 U.S.C. § 212. No allegation has been made that I am ineligible.

There is no dispute to the facts that I allege that make me eligible for a passport as a function of

my United States citizen birthright. The fact that I applied, paid the fee, provided an accurate

photograph and swore under oath the truth of the statements on the application, makes me

eligible for the passport that I demand, and that I need to be unshackled from the boundary of

borders of the United States.

> Before a passport is issued to any person by or under authority of the United States
> such person shall subscribe to and submit a written application which shall contain a
> true recital of each and every matter of fact which may be required by law or by any
> rules authorized by law to be stated as a prerequisite to the issuance of any such
> passport. If the applicant has not previously been issued a United States passport, the
> application shall be duly verified by his oath before a person authorized and
> empowered by the Secretary of State to administer oaths. 22 U.S.C. § 213

7.    The United States laws that govern passport Eligibility support the likelihood that I

will prevail on the merits of my claim.

## IV.   The Defendants' Demand for Proof of No-Proof Is Not Law nor Is It Reasonable

8.    The Defendant denied my passport application, not because my documentation fell

short of showing my citizenship. They did not deny my passport because my Virginia Driver's

license and accompanying secondary documents were not sufficient to substantiate my identity. They denied my passport because I did not apply to the Virginia Government to get a certificate that no birth certificate exists. As they unreasonably say, ""If a birth certificate does not exist, the applicant must submit a "letter of no record" certification from the official custodian of vital records in the U.S. state where the birth reportedly occurred."" The unreasonable reason for such a "letter of no record" is supposedly for the purpose of proving my identity and citizenship at birth. A "letter of no record of birth" does not provide evidence of a birth in or out of the United States. A "letter of no record" does not provide evidence of identity. The reasonable interest of Government cannot reasonably be achieved by the 'proof of no proof' letter of no record: ". . . she is being asked to provide [a letter of no record],. . ., to establish her identity and that she was born in the United States . . ." (Opposition, p. 10, ¶1st); "The proof of identity and citizenship Department is merely requesting [letter of no record for] proof of identity and citizenship . . . that there is no birth record for her on file" (*Ibid.*, ¶3rd); "everyone who applies for a passport is required to present proof of identity and citizenship" (*Id.*, p. 13, last sentence); ". . . the Department's request for additional documentation [letter of no record] does not run afoul of due process, given that the Department may request additional evidence for proof of citizenship . . ." (*Id.*, p. 15, ¶2nd); ""The applicant for a passport "has the burden of proving documentary evidence that he or she is a U.S. citizen . . ."(22 C.F.R. § 51.40), and "must provide documentary evidence that he or she is a U.S. citizen . . . (22 C.F.R. § 51.41). Pursuant to 22 C.F.R. § 51.45, the Department has discretion to require additional evidence of U.S. citizenship . . : "The Department may require an applicant to provide any evidence that it deems necessary to establish that he or she is a U.S. citizen . . .."" (*Id.*, p. 23, ¶3rd); ". . . regulations clearly impose an obligation on the applicant to establish her identity and that she is a U.S. national through the submission of documentary evidence." (*Id.*, ¶2nd); ". . . Plaintiff has been requested to provide

4

additional information per 22 C.F.R. § 51.45 to ascertain her identity . . ." (*Ibid.*)

9.    None of the statutes or regulations call for proof of 'no proof' of citizenship nor do they call for proof of 'no proof' of identity.  A "letter of no record" is proof of no proof.  The Defendants' citing of the Supreme Court on page 17 of their opposition supports the likelihood that I will prevail on the merits:  "[p]articularly in light of the 'broad rule-making authority granted in the [Passport Act of 1926],' a consistent administrative construction of that statute must be followed by the courts 'unless there are compelling indications that it is wrong.'" Id. at 291 (quoting E.I. du Pont de Nemours & Co. v. Collins, 432 U.S. 46, 55 (1977)).  *Haig v. Agee*, 453 U.S. 280, 291 (1981).  This is a case where the administrative construction of demanding proof of no proof is a compelling indication that the agency's demand is wrong.

## V.    The Unconstitutionality of a Phrase in 22 C.F.R. § 51.65 Opened the Door for the Unreasonable Proof of No-Proof

10.    I don't contest the statutes or the regulations that are reasonable to verify my place of birth and identity from affidavits by credible eye-witnesses and whatever documentation that I can find.  The regulation that I challenge is that portion of 22 C.F.R. § 51.65 which allows an arbitrary and capricious demand for proof of no-proof due to the vague and overly broad phrase, ". . . or does not provide additional information as requested by the Department . . . "  The phrase should be stricken.  It dissolves the foundation of the reasonable phrase before it that reaches the legitimate purpose of the regulation, ". . . will be denied if an applicant fails to meet his or her burden of proof under the applicable regulations or otherwise does not provide documentation sufficient to establish entitlement to a passport . . . " (*Ibid.*).  That phrase that I am challenging is unconstitutional as applied to me because it is being used by the Defendants to unlawfully deny my passport notwithstanding I meet the passport requirements of citizenship and identity, and only fail at producing proof of no-proof ("a letter of no record").  It may be unconstitutional on its face but I leave that for those who will draft a response to the dispositive motion.  I expect he

will amend the complaint for clarity just as I would if I had to continue to litigate on my own.

## VI.    The Law and Regulations That Require Proof of Identity and Citizenship Are Fulfilled

11.    Throughout his opposition memorandum, the Defendants misapply the applicability of the importance of the law and the regulation relating to passports.  The passport laws and regulations are reasonable regulations to minister a legitimate purpose of government, excepting that portion of 22 C.F.R. § 51.65 that I contest.  The laws and regulations must be in balance with the compelling governmental interest in general to the national security, friendship between the people of the United States and our international neighbors, and protection for the people of the United States in their natural liberties such as travel for which the fundamental law is instituted to protect.  All of those purposes of government are in opposition to the Defendants' denial of my passport as retaliation for my not obtaining and providing proof of no proof.

12.    The statute, the Act of Congress, legitimate legislative power, only expressly says who is not eligible to receive a passport, "§212. Persons entitled to passport - No passport shall be granted or issued to or verified for any other persons than those owing allegiance, whether citizens or not, to the United States."  The Defendants cite the associated regulation 22 C.F.R. § 51.2.  No evidence or allegation has been made that I do not owe allegiance.  I swore under oath that I owe allegiance as a matter of my birthright.  I meet the statutory and regulatory burden. The subsequent sections of the United States Code, 22 U.S.C. §§ 212a and 212b provide restrictions to those who are proven to be sex offenders or sex traffickers.  Not applying for a state birth certificate or a certification of no record falls short of Congress's consideration of miscreants whose cross-border travel should be restricted.

13.    The statute, the Act of Congress, legitimate legislative power, only requires:  "Before a passport is issued to any person by or under authority of the United States such person shall subscribe to and submit a written application which shall contain a true recital of each and every

matter of fact which may be required by law or by any rules authorized by law to be stated as a prerequisite to the issuance of any such passport (22 U.S.C. § 213. Application for passport; verification by oath of initial passport).  22 C.F.R. § 51.20 reiterates that requirement.  The written application which I subscribed to and submitted on my written application, under oath, contained a true recital of each and every matter of fact that is required by law or by any rules authorized by law to be stated as a prerequisite to the issuance of my passport.

14.    The Government, on page 4, cites 22 C.F.R. § 51.40 which explains that I have the burden of proving that I am a U.S. citizen or non-citizen national.  It does not say that I have a burden to prove the existence or non-existence of Virginia records.  They cited 22 C.F.R. § 51.41 that says I must provide documentary evidence that I am a U.S. citizen or non-citizen national. My four affidavits are the documentary evidence of my U.S. citizen birth right.  No evidence or allegation has been made that I have not met that burden.  I alleged and showed that I meet that burden.  The Government's only allegation is that I refused to conform to the Defendants' demand to prove the <u>lack</u> of Virginia records, the lack of which records cannot prove my citizenship.

15.    The Government's citing of 22 C.F.R. § 51.42 provides an important comparison to the "must" language they use saying that I needed a "letter of no record." (ECF 17, p. 6, ¶1st). The regulation at paragraph (a) provides, "A person born in the United States **generally** must submit a birth certificate" (Emphasis added).  There is nothing in paragraphs (a) or (b) that says a "letter of no record" is a matter of primary or secondary evidence.  The regulation says, "If the applicant cannot submit a birth certificate that meets the requirement of paragraph (a) of this section, he or she must submit secondary evidence sufficient to establish to the satisfaction of the Department that he or she was born in the United States.  Secondary evidence includes but is not limited to . . . and/or affidavits of persons having personal knowledge of the facts of the birth.

(Emphasis added). I provided four eyewitness affidavits and other items on the list (ECF 1-2, pp. 1-3, 6-13, 33-34, 41-44, 55-56). The only thing missing is that which the statutes and the regulations do not require, a "letter of no record."

16. The Government, on page 4, cited the statute 22 U.S.C. 211a, which merely gives power to the Secretary of State to issue passports, "under such rules as the President shall designate and prescribe for and on behalf of the United States." There is no evidence or allegation from the Government that the President has prescribed any rule that would exclude me from a passport. I am likely to prevail on the merits of my claim.

## VII. The Defendants' Assertion That the Fundamental Law Does Not Protect My Right to Cross the Border, Under My Circumstances, Shocks the Conscience

17. I disagree with the allusions in the Defendants opposition memorandum that wrongly diminishes the government's duty to protect the right of cross-border travel. Their misapplying *Haig v. Agee*, 453 U.S. 280 (1981) and other cases, and downplaying the Supreme Court's affirmation of rights related to international travel in *Aptheker v. Secretary of State*, 378 U.S. 500 (1964) will be addressed by my newcoming lawyer's argument in my Response to the Defendants dispositive motion. The Defendants' assertion that my right to travel internationally is not protected by the fundamental law shocks my conscience. The unreasonable denial of my passport, under the mystery 8 FAM 303.2, for not providing proof of 'no proof' logically violates the free exercise clause of the First Amendment. International travel is commonly understood as necessary as an exercise of the Christian religion to go into all the world and preach the gospel, Matthew 28:19-20. I have shown that, and it is not disputed, the religious duty to go into all the world happens to be my full-time occupation. Their denial of my passport places a substantial burden upon my free exercise of religion. There is no likelihood of the Defendants demonstrating by clear and convincing evidence that they have a compelling interest to deny 'my person' a passport. They are not likely to demonstrate that they have a compelling interest in

using the denial of a passport to compel me to give the Vital Statistics agencies information that can enable the agencies to couple my name with a partially-filled-in birth or Social Security record. I am likely to prevail on the matter of whether my right to cross-border travel is protected by the fundamental law, even without the religious element. I am likely to prevail on my Religious Freedom Restoration Act claim embedded in my first cause of action (ECF 1, pp. 17-19, ¶s 47-50). Just like the Defendants did not prove a compelling governmental interest for my father to identify with an SSN in order to have a passport, *Carmichael, et al. v. Pompeo, et al.*, 486 F. Supp. 3d 360 (D.D.C., 2020), the government will not prove a compelling governmental interest in proof of no proof, or in forcing me to give information to any agency whether or not it has the means to associate my name with an SSN record.

## VIII. The Defendants' False Assertion That the Plaintiff to Will Not Suffer Irreparable Harm Is Contrary to Sworn Allegations and Declarations

18.    My declaration (Attach. 1), and the Declaration of Jesse Carmichael (ECF 15-1), explain the irreparable harm that results from the daily *quasi writ ne exeat republica* that I suffer at the lawless conduct of the Defendants and the unlawful denial of my passport. My motion to compel stated that "We are continually and unlawfully chained until the passport is issued." The Defendant callously asserted in his motion for relief from the courts order, ". . . Plaintiff identifies no immediate international travel plans that would require the use of the requested passport" (ECF 14, p. 2). The unlawful chains obviously preclude travel plans. Without a prophetic revelation, I could not place in my statement of facts the injuries that I would suffer between June 26, 2024 and today. I could not state for certainty the havoc that has been wreaked in the lives of our students, their families, their supporters, and the credibility of the YWAM Virginia ministries. Our overseas ministry outreach that begins December 28, 2024, had to be significantly altered, and limited in our choices for cross-cultural outreach, due to my being chained within the borders of the United States resulting from the unreasonable demand for proof

of no proof. The overseas portion of our ministry outreach is currently cut in half, delayed until February resulting from my not yet having a passport. Compare that to the hardship described by the writer of the brief in opposition who incorrectly thought it reasonable to prolong the suffering of myself and our ministry team when his boss assigned my case to him the day before he wanted to go on vacation. There is grave injustice here. Every day, if not every minute, that the unreasonable denial of my passport is prolonged causes irreparable damage to me, the YWAM staff, and the students to whom we minister. No monetary relief can assuage the daily damage that occurs not only to me, but the people who have to adjust a team of missionaries' plans around my not having a passport (ECF 16-1, Jesse Carmichael Declaration and Attach. 1, Jordan Declaration). The balance of equities pushes the justice pendulum to its limit in my favor.

IX. **Compelling the Application for a Birth Certificate Obliterates Anonymity Necessary For Plaintiff's Religious Exercise, Imposing a Substantial Burden**

19.    I intend to proffer evidence that it is likely that the hospital sent birth information regarding my birth, the date it occurred, my parents' names, and my parents' address, but without my name because my parents refused to disclose it to them for reasons of religion. I will proffer evidence that it is likely that Virginia's Vital Statistics agency sent the information to the Social Security Administration. I intend to proffer evidence that there is a means for the Social Security Administration to amend their records so that a Social Security Account record will have my name to associate with my birth date, parents' names, and other identifiers. Applying for a birth certificate as a means to search the Virginia records would be a voluntary act of mine that would eradicate the painstaking efforts of myself and my family to maintain my anonymity regarding the beastly enumeration program. The denial of my passport as a means to coerce me into doing that which might volunteer myself for a universal identification system, is a burden upon my "free exercise of religion, according to the dictates of conscience."

That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and charity towards each other.  Virginia Constiton, Article 1, Section 16, *Free exercise of religion; no establishment of religion.*

20.    If my name is associated with a Social Security Administration record, there are statutes that will compel me to either identify with the SSN or forego a professional, occupational, recreational, marriage or driver's license pursuant to section 666 of the Health and Human Services Code (42 U.S.C. § 666(a)(13)(A)).  I will not be able to vote pursuant to the Virginia Constitution, Article II, Section 2, "Applications to register shall require the applicant to provide the following information on a standard form: full name; date of birth; residence address; social security number, **if any**; . . ."  (Emphasis added).  The passport agency says that it uses the SSN as a means of identification.  The passport is an identification document.  My identification would thereafter be inextricably linked to my passport, causing me to have to choose between cross-border travel and violating my religious conscience.  My refusal to submit my name and birth information to the Virginia Department of Health and Vital Statistics is a necessary exercise of religion, "Whatever is not of faith is sin."  Romans 14:23.

> A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Kaemmerling v. Lappin* , 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.* , 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) ).  Similarly, a substantial burden exists where government action "require[s] [a] plaintiff 'to choose between following the tenets of [his] religion and receiving a governmental benefit.' " *Singh v. McHugh* , 185 F. Supp. 3d 201, 217 (D.D.C. 2016) (quoting *Navajo Nation v. U.S. Forest Service* , 535 F.3d 1058, 1070 (9th Cir. 2008) ).  "Religious exercise necessarily involves an action or practice" and, therefore, a plaintiff must allege "that he is put to a choice" between complying with a government requirement and violating his religious beliefs. *Kaemmerling* , 553 F.3d at 679 ; *see also Holt v. Hobbs* , 574 U.S. 352, 361, 135 S.Ct. 853, 190 L.Ed.2d 747 (2015) (finding that correctional department grooming policy required choice between violating religious beliefs or facing disciplinary action). *Carmichael, et al. v. Pompeo, et al.*, 486 F. Supp. 3d 360, 369 (D.D.C. 2020).

**X.    Exiting the Borders of the United States Is a Right Whose Privileges and Immunities**

**Can Only Be Restricted By Law Which Must Be Obeyed As A Duty of Religion**

21.    The government's suggestion that international travel is not a fundamental right is erroneous, a notion detached from understanding the organic law of the nation. The right of international travel is one of those rights for which our government was instituted to protect; a right of life, liberty and the pursuit of happiness[1]. International travel is an absolute duty according to the revealed law, Genesis 1:28, to "fill the earth and subdue it." International travel is an absolute duty according to the revealed law, Matthew 28:19-20, "Therefore go and make disciples of all nations, baptizing them in the name of the Father and of the Son and of the Holy Spirit, and teaching them to obey everything I have commanded you. . . " Obtaining a passport before crossing the U.S. border is an exercise of religion in conformance to the revealed law, Romans 13:1, "Let every soul be subject to the governing authorities. For there is no authority except from God, and the authorities that exist are appointed by God." Standing against the acts of the Defendants that usurp the constitution, arbitrarily and capriciously demanding proof of no proof, is a duty of religion according to the revealed law, I Peter 2:13, "Submit to man's institutions . . . " Man's institution in America to which I owe allegiance is the institution of the constitutional structure of government. Conforming to my duties of religion as explained above, I submitted valid documentation of both my natural born citizenship and my identity to fulfill the institution's requirements under the applicable statutes and regulations. I have a duty of religion for the sake of that institution to not jeopardize my life, liberty and happiness by submitting to a non-constitutional edict of a mystery adjudicator who would want me to apply for a "letter of no record" which in its prove-a-negative-nature cannot verify my citizenship or identity. As a duty of religion, I cannot file the Virginia form which can enable the records of theirs and the Social Security Administration's to change a record that they might have to associate my name to it,

---

[1] Declaration of Independence, ¶ 2nd, 1776

Romans 14:23, ". . . for whatever is not of faith is sin." In these matters I am protected by the First Amendment which prohibits Congress and its mystery adjudicator-delegate from interfering with my free exercise of religion. Religion is belief coupled with obedience that drives my activities according to the institutions to which I own earthly allegiance, Virginia and the United States. The law of Virginia, Virginia Constitution, Article I, Section 16, defines religion in our institution, "That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and charity towards each other." That institutional law expresses privileges and immunities of mine as a part of my birthright.

> Many invaluable benefits flow from United States citizenship, including rights to vote in federal elections, to travel internationally with a U.S. passport, to convey citizenship to one's own children even if they are born abroad, to be eligible for citizen-only federal jobs, and, indeed, to be free of discrimination by Congress on the basis of alienage. *Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017)

22.   In one way, or one reason or another, I will prevail on the merits under the Religious Freedom Restoration Act, or the First Amendment, or the passport statute 22 U.S.C. § 2721 that prohibits the denial of passports for speech, beliefs, activities, association or membership that is protected by the First Amendment. It is likely that my complaint will be amended once I get a chance to meet with the lawyer who contacted our ministry staff while I have been out of reach. I will likely prevail on the merits.

## XI.   Defendants Misrepresent the Facts Regarding Urgency, Violating Rule 11(c). Delays By the Court, Marshalls, and Defendants Exacerbate the Urgency

23.   The Defendants' page 19-20 misrepresentations of the facts of my exhaustive attempts at administrative remedy, prelitigation discovery attempts, and diligence in prodding the court and Defendants to action for my relief is a factual contention that contradicts the case file,

13

and has no evidentiary support, violating Rule 11(b)(3).  The violation is like that made by the Defendants in their November 19, 2024, motion for relief from the court's deadline order to file a brief in opposition to my immediate emergency motion to compel.  I notified the defendants of their Rule 11 violations by email on November 24, 2024, and I served the Defendants pursuant to Rule 5(b)(3) by certified mail on November 25, 2024, my notice and demand to the Defendants to cease the Rule 11(b)(3) and other Rule 11 violations.  The Defendants had until December 16, 2024, to correct or withdraw their misrepresentations or be subject to a motion for sanctions pursuant to Rule 11(c)(2).  This, their second offense, was committed five days after they received my formal notice through their mail room.

24.    The Defendants' wantonly exclude facts regarding, the timely filing of my complaint, alleging falsely that I filed my complaint "more than fourteen months later" referring to the Defendants' second-to-last reply to my correspondence.  I filed my complaint, less than one year from the Defendants' correspondence to my application for administrative appeal (ECF 1-2, p. 80, Office of Adjudication ltr. July 3, 2023).

25.    Next, the Defendants' false representation of facts in the record is ". . . as demonstrated by Plaintiff's own actions, this is not a matter of urgency that demands immediate injunctive relief from this court."  The actual facts in the record turn the Defendants' argument on its head since my actions demonstrate that I was doing everything in my power to properly file the complaint and serve the complaint documents in a timely way.

26.    Just prior to the Defendant's final denial letter of July 3, 2023 (ECF 1-2, pp. 79-80, Exhibit 16), I filed my last Freedom Of Information Act request to Alaina Teplitz, FOIA Officer and Assistant Secretary of Administration, demanding the document that showed the law that said a certificate of no birth certificate was something that the government could require (ECF 1, p. 13, ¶35.; ECF 1-2, pp. 75 through 78, Exhibit 15).  If I immediately filed suit upon receiving

the July 3, 2023, final answer to my request for administrative appeal, my FOIA request could not be answered by FOIA Officer Teplitz because the litigation status would produce an exemption to FOIA obligations. I waited a reasonable time to have the FOIA Officer fulfill the FOIA request. Once it was very clear that the FOIA was being ignored, I prepared to file suit.

27.    Prior to filing suit, I gave notice to the Defendants of my intention to file suit by writing a notice and demand to the United States Attorney General Merrick Garland by my letter of May 1, 2024 (Attach. 1, Jordan Declaration). That letter to General Garland, whom I reasonably presumed to be the lawyer for the Defendants in their official capacity, had the exhibits that I filed with my complaint, such as:

1) Attach 4's Exhibit 1 is now Case Exhibit 16, ECF 1-2, pp. 79-80
2) Attach 4's Exhibit 2 is now Case Exhibit 5, ECF 1-2, pp. 30-45
3) Attach 4's Exhibit 5 is now Case Exhibit 10, ECF 1-2, pp. 56-57
4) Attach 4's Exhibit 6 is now Case Exhibit 11, ECF 1-2, pp. 69-70
5) Notice letter Exhibit 7 is now Case Exhibits 14 and 13, ECF 1-2, pp. 73-74, 71-72.

28.    The notice and demand to General Garland also had other exhibits.

29.    Waiting a reasonable time for General Garland or the Defendants to comply or respond, I filed suit on June 26, 2024, less than one-year from the Defendants' July 23, 2024, final denial of passport and appeal (ECF 1, p. ; ECF 1-2, p. 80). I have exercised due diligence within the resources of time, self-education available to me in light on the non-responsiveness of the Defendants.

30.    The docket record contradicts the Defendants' false allegation that all the litigation delays are my fault and is evidence for demonstrating non-urgency:

(a)    The court did not immediately process my complaint and issue the summons to for my process server to serve when he filed the complaint for me on June 26, 2024 (ECFs 1 through 3). The delay was unreasonable.

(b)    The next day, June 27, 2024, I served by certified mail, via my process server

agent, the complaint, exhibits, motion to compel, and all other documents that I filed on June 26, 2024 (ECF 5). I ensured that the court had proof of service by my filing on August 28, 2024 (ECF 4).

(c)  The court arbitrarily and unreasonably ignored my forma pauperis petition for one hundred days until I filed an innovative means to push the court into action. My motion to expedite the processing of my petition caused the court to react and issue the order within 34 minutes of the postal delivery clerk handing them the document (Attach. 1, Jordan Declaration);

(d)  The Defendant tried to return the case documents to me (ECF 6, p. 4). I returned the documents to them with letters inviting them to avoid litigation by issuing my passport and asking them to provide the name of the person who represented themselves as "Customer Service Department" (ECF 6, pp. 6-7, 9, 11). They received the document but did not tell me who the pseudonym person is.

(e)  Judge McFadden was assigned the case, 103 days after I filed it. On the 112th day, October 16, 2024, the Judge ordered the clerk to issue the summons, and assign it to the U.S. Marshalls' office for service of process. His order gave the Defendants seven days from service of process to file an opposition (MINUTE ORDER, October 16, 2024);

(f)  The clerk issued the summons 117 days after I filed the complaint and motion;

(g)  One day after the clerk issued the summons, I moved to have my agent be assigned the authority to issue the summons to the Defendants sued in their individual capacities pursuant to Rule 4(c)(2) and (3) (ECF 9, 9-1, 9-2). The court denied the motion on November 1, 2024, saying, "The Plaintiff's 9 Motion for Order is DENIED as moot because the United States Attorney was served on 10/29/2024." The order led me to reasonably believe that the Defendants in their official capacity and in their individual

capacity were adequately served the summons through the office of the U.S. Attorney, notwithstanding that the summons had not yet been delivered to the United States Attorney General and Secretary Blinken at his Executive Office. The November 1, 2024, order reasonably led me to believe that the deadline for the government to offer a brief in opposition was no later than November 6th.

(h)  November 7, 2024, I filed a notice of the Defendants' waiver of opposition (ECF 13 and 13-1).

(i)  The U.S. Marshall's served the summons piece-meal to the U.S. Attorney, November 1, 2024, 128 days after I filed the case (ECF 11). Then they served Secretary Blinken on November 12, 2024, 139 days after I filed the case, twenty-two days after they received the summons document (ECF 12). The physical proximity of the Marshall's office to the offices of the Attorney's General is ½ mile, an 8 minute walk one-way; and 1.8 miles, a 5 minute drive to the Secretary's office. Ten days to serve the Attorneys General and twenty-two days to serve the Secretary is unreasonable at best.

(j)  Assuming that the deadline was tolled from November 6th to November 19th due to the unreasonable delay of service of summons to the Secretary, the Defendant through his Attorney surprised the Defendants' Attorney of Record with notice of his case assignment on the day of the final deadline, one day before his annual leave (ECF 14).

31.  This timeline refutes the Defendants' Attorney of Record's twisted assertion on page 20 of his motion, "Thus, as demonstrated by the Plaintiff's own actions, this is not a matter of urgency that demands immediate injunctive relief from this court." The timeline accurately assessed by an impartial court should tip the scale of justice as one of the equitable reasons that the court's immediate intervention by order to issue my passport is necessary.

## XII.  I Am Likely to Prevail in the Factual Disputes Material to My Causes of Action and the Defendants Dispositive Motion

17

32.    My declaration vouches for my intention to proffer evidence supporting my reply that disputes the allegations of the Government.  It provides support for the forthcoming 'Response' to the Defendants' dispositive motion.  My complaint does not merely have allegations, the allegations in the statement of facts are supported with my swearing an oath to almighty God where I verified my complaint (ECF 1, p. 24):  "I hereby verify the foregoing complaint, notices, demands, etc., and the accompanying exhibits, swearing them to be true were they are known to me first hand, and given in good faith to be accurate and true, whereby and swear under the laws of Virginia and the United States, with Almighty God as my witness (*sic*)."  Though I am just now noticing the typographical errors such as "were" that should be 'where', and where "whereby and swear" should read ' whereby I swear', I correct the error in my Declaration (Attach. 1, Jordan Declaration).

> On motion by defendant for summary judgment, plaintiff's allegations were required to be treated as true. *Guinn Co. v. Mazza* 296 F.2d 441 (D.C. Cir., 1961).

> Summary judgment must be denied where movant fails to show his entitlement to a favorable determination as a matter of law. *Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir., 1973)

## XIII. I Will Likely Prevail in Jurisdictional Matters

33.    The Government's venue challenge, Rule 12(b) and Rule 56 motion for dismissal is insufficient to exclude the case from adjudication by this District Court, District of Columbia. My case shall prevail substantially on its merits.  Congress does not have the authority to do what the Adjudicator is trying to do, and therefore the power could not have been delegated.  The Court should grant my motion for immediate equitable relief and compel the Government to issue my passport, as soon as possible to decrease the daily injury to my liberty rights and pursuit-of-happiness property right.

## XIV. I Will Likely Prevail Against the Defendants' Venue Challenge

34.    The Government challenged the venue based upon a faulty reading of the statute, 8

U.S.C. § 1503, referred to in the third count of my complaint (ECF 17, pp. 17-18).  They cited

the residency provision of the Plaintiff, and excluded the very important part of the same

sentence that refers to residency of the Defendants, ". . . and jurisdiction over such officials in

such cases is conferred upon those courts" (8 U.S.C. § 1503(a)).  Venue for all the causes of

action is pursuant to 28 U.S.C. § 1391- Venue Generally.

> "(e) Actions Where Defendant Is Officer or Employee of the United States.—
>     (1) In general.—  A civil action in which a defendant is an officer or employee
> of the United States or any agency thereof acting in his official capacity or under
> color of legal authority, or an agency of the United States, or the United States, may,
> except as otherwise provided by law, be brought in any judicial district in which (A) a
> defendant in the action resides, (B) a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the subject of
> the action is situated, or . . . "  28 U.S.C. § 1391

35.    The Defendants do not contest that the Defendants are the United States, and officers

of the United States in their official capacity whose place of business resides as a matter of law

and fact in the District of Columbia, fulfilling 28 U.S.C. § 1931(b)(1).  The actions of theirs in

the District of Columbia is where a substantial part of the events or omissions giving rise to the

claim occurred, fulfilling 28 U.S.C. § 1391(b)(2).

> To survive a motion to dismiss for improper venue when no evidentiary hearing is
> held, the plaintiff need only make a prima facie showing of venue. *See Delong Equip.*
> *Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988). *Mitrano*
> *v. Hawes,* 377 F.3d 402 (4th Cir. 2004)

36.    Even those sued in their individual capacity have their place of business in

Washington, D.C., where a substantial part of the events and omissions giving rise to the cause

of action occurred and the place of service of process upon them exists.  My first cause of action

puts the jurisdiction squarely in this court for the order to compel the officer of the United States

to perform their duty cited in my first cause of action.  The constitutional challenge of my second

cause of action also places jurisdiction squarely in this court.

(a) Section 2's language "is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority" can reasonably be read as describing the character of the defendant at the time of suit, and, so read, limits a covered "civil action" to one against a federal official who is at that time acting, or failing to act, in an official or apparently official way. Such a "civil action" is that referred to in § 1 of the Act, 28 U.S.C. § 1361, which gives district courts jurisdiction of "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Pp. 535-536. *Stafford v. Briggs*, 444 U.S. 527, 535 (1980)

37.    The Defendants have not offered any evidence that any of the Defendants have any location of residing anywhere but the District of Columbia.  My service of process address is in Hampton, Virginia, but I've resided elsewhere throughout the process of my passport applications (Attach. 1, Jordan Declaration).  My physical location throughout the administrative and litigative process has been Virginia Beach, Chesapeake, Hampton, and Newport News Virginia;  Adams, Tennessee; is lately Corolla, North Carolina; and will soon be Florida, as a function of my ministry vocation and leading a team in disaster relief (ECF 16-1, Jesse Carmichael Declaration; Attach. 1, Jordan Declaration).  The D.C. District Court is reasonably appropriate for all the parties, especially the Defendants who will be most inconvenienced by a change of venue.  The Defendants' erroneous venue challenge, without a motion to change venue, is no bar to the Court's power to compel the immediate equitable relief of the issuance of my passport.  Their suggestion of segmenting the case into separate jurisdictions will create a multiplicity of suits at odds to judicial economy.  "Multiplicity of suits is one of the grounds of equitable jurisdiction recognized by federal courts." *Pacific Fire Ins. Co. v. C.C. Anderson Co. of Nampa*, 42 F. Supp. 917 (1942).  "Cardinal principle of equity is that once there is equitable jurisdiction, equity has jurisdiction to afford complete relief, and one of basic functions of equity is to prevent multiplicity of actions." *Angoff v. Goldfine*, 270 F. 2d 185 (C.A. Mass. 1959). "When a federal court once properly takes equitable jurisdiction of a controversy on any ground, it may decide all questions of law and fact necessary for a complete disposition of the case." *Sun

20

*Oil Co. v. Burford,* 130 F.2d 10 (C.C.A. Tex., 1942), reversed on other grounds 319 U.S. 315.

The venue for all remedy and relief claimed in the action is proper in the District of Columbia

under 28 U.S.C. § 1391.

## XV.  I Will Likely Prevail Over Defendants' Rule 12(b)(1) Motion

38.    My verified complaint alleged facts that show that the Defendants have duties under

law that they violated and that their breach of duty is the cause of my daily injury, and there is

relief that the court can grant under law or equity.  I cited statutes that provide subject matter

jurisdiction to the District Court where the court has power for remedy and relief (ECF 1, p. 3, ¶

8.).  "The judicial power of the United States, vested in the federal courts by U.S.C.A. Consti.

Art. 3, § 1, embraces all controversies of a justiciable nature arising within the territorial limits of

the nation, no matter who may be the parties thereto, except so far as there are limitation

expressed in the Constitution on the general grant of judicial power. *Kansas v. Colorado,* 206

U.S. 46, 51 (1907).

> "'The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995) (quoting *Capitol Leasing Co.* v. *F.D.I.C,* 999 F.2d 188, 191 (7th Cir. 1993)

## XVI. I Will Likely Prevail Over Defendants' Rule 12(b)(6) Motion

39.    The Government's Rule 12(b)(6) motion will likely be denied for not being able to

meet the 'beyond doubt' threshold necessary to warrant a dismissal on that Rule.

> "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts *46 in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1975)

40.    My complaint provided more than a short plain statement of the claim to support my

allegations and causes of action that are judiciable by the D.C. District Court.

The respondents also argue that the complaint failed to set forth specific facts to

support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. . . Following the simple guide of 9 Rule 8(f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. *Maty v. Grasselli Chemical Co.*, 303 U.S. 197. *Conley v. Gibson,* 355 U.S. 41, 47-48 (1975)

41.    Even if the complaint did not check the blocks on all the technical matters, it will be remedied by the lawyer who will draft the Response to the dispositive motion. I am likely to prevail over the Rule 12(b))(6) motion for dismissal on the face of what is in my complaint.

## XVII. I Will Likely Prevail Over Defendants' Summary Judgment Motion

42.    The Defendants raised factual contentions that are material to whether the law supports my causes of action and claims for relief. Their citing of 8 FAM 303.2-4(A)(b) (ECF 17, p. 6) is not evidence of law that demands a "letter of no record." The contents of that 8 FAM citation, if it exists, is material to their defense and to my causes of action, converting the Defendants' Rule 12(b)(6) motion into one for summary judgment under rule 56.

43.    The 8 FAM 303.2-4(A)(b) document was never referenced in any correspondence by the Department. If it exists and applies, it should have been produced in response to my many FOIA requests. I tried to get the document from the government website but was told in an email from the Department, "Because 8 FAM 303.2 contains SBU information it is not available to the public." (Email exchange with Kelli Delaney, U.S. Department of State, Office of Organizational Policy, A/SKS/PPKM/OP, Dec. 13, 2024) (Attach. 1, Jordan Declaration). It cannot be relevant until it is no longer hidden from the Plaintiff's and Court's view. The Defendants also raised a contention as to whether the quasi-governmental demand for me to subject my birth and identity information to a vital statistics agency places a substantial burden

upon my religion. The question of a substantial burden may be a matter of law but it can only be

a matter of law as applied to the facts. In good faith, I intend to proffer evidence that shows that

I cannot submit the details of my identity, birth, and family members to an agency that is likely

to associate me with an SSN (Attach. 1, Jordan Declaration). The Defendants Rule 12(b)(6)

dispositive motion is converted to a Rule 56 motion for summary judgement as explained in Rule

12(d):

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule
> 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the
> court, the motion must be treated as one for summary judgment under Rule 56. All parties
> must be given a reasonable opportunity to present all the material that is pertinent to the
> motion.

44.    The standard for summary judgment on the Government's motion is clear and

convincing evidence since they must "demonstrate" that there is no material fact, that is by the

standard of clear and convincing evidence, and that the Defendants are entitled to judgment as a

matter of law:

> The trial court on a motion for summary judgment, and the court of appeals, upon
> review of ruling on such a motion, must require that movant meet the burden of
> clearly demonstrating that there is no material issue of fact and that he is entitled to
> judgment as a matter of law. *Semaan v. Mumford,* 335 F.2d 704 (D.C. Cir, 1964).

## XVIII.  Due Process Violations Will Be Addressed in Forthcoming Response Where I Will Likely Prevail on the Merits

45.    A professional lawyer is better suited to address the Defendants' challenges to my

claim of injury due to Fifth Amendment violations. For the sake of showing that I am likely to

prevail: On its face, having a mystery, closed to the public, "letter of no record" 8 FAM 303.2

has to be a violation of substantive and procedural due process. The public is not given fair

warning, or whatever the trained lawyer understands meets the demands of due process, if the

requirement were an act of Congress or a Federal Regulation. The document is a secret. The

Department of State 8 FAM website says the document is unavailable (Attach. 1, Jordan

Declaration).  Demanding a proof-of-no-proof document, that by its nature cannot prove citizenship or identity, and cannot prove non-citizenship or false identity, is ridiculous and unreasonable to my reasonable mind of average intelligence.  It must be a violation of substantive or procedural due process.

## XIX. Other Matters Reserved for the Forthcoming Response to the Defendants' Dispositive Motion

46.    The final denial of my appeal (ECF 1-2, p. 80) sent to Secretary Blinken and Director Peek  (ECF 1-2, pp. 71-74) was not based upon the 22 C.F.R. § 51.42 as claimed by the Government's motion Attorney.  The Agency's finding was that my passport was denied on the basis of 22 C.F.R. § 51.43(b)(2), Persons born outside the United States applying for a passport for the first time.  The Defendants excluded me from an administrative hearing to review the basis of the denial, as per 22 C.F.R. §51.70 (ECF 1-2, p. 80).  The finding by the passport adjudication officer or their superintendent on July 3, 2023, is arbitrary and likely a violation of procedural or substantive due process.

47.    Suit under the Administrative Procedure Act (APA) applies if there is no other remedy and relief available under any other provision of law.  Until complete relief is achieved, I can't concede to the APA not applying.

**Summary**

48.    The crux of the Governments' opposition to my motion to compel the issuance of my passport is that the Department (Adjudicator) requested me to "provide additional information" that does not exist, that they have no authority to coerce me to spawn into existence, and that does not have any rational basis to the statutes and regulations that require proof of citizenship and identity rather than something that cannot prove citizenship or identity.  The adjudicator is exercising a lawmaking power that the Congress has not exercised.

49.    The lawmaking functions of the Congress and the Code of Federal Regulations

(C.F.R.), cited by the Defendants, all support that I should have been, and should now be, issued my passport. As quoted by the Defendants' brief in opposition, "It must be pursuant to the law-making functions of the Congress" citing *Kent v. Dulles* 357 U.S. 116.

50.    The mystery 8 FAM 303.2 which was never claimed by the Department as an authority for any of their demands, is not the 'law making function of the Congress.' It reaches beyond the express demands of the Acts of Congress and the Code of Regulations which are not arbitrary and capricious since they demand proof of proof rather than proof of no proof such as the demand for a "letter of no record" which cannot prove citizenship or identity.

51.    It is the fact and law of my birthright that makes me eligible for a passport and merits the compelling of its issuance. Whether 22 C.F.R. § 51.65 allows the passport adjudicator to use my need for a passport to coerce me into applying for a state benefit against my will is a separate matter upon which I will prevail.

52.    The proof of no proof is, without authority of law, trumping any documentation that I've provided so far. The photographs that I found in two church directories that provide evidence of my birth in Hampton, Virginia, and my identity, cannot matter if proof of no proof prevails (Attach. 1, Jordan Declaration).

53.    The Government's opposition, to my motion for immediate equitable relief, is insufficient as to fact, law, and equity. Immediate equitable relief of the issuance of my passport is warranted.

54.    The four prongs required of the threshold for immediate injunctive relief are fulfilled.

(a)   Being chained within the borders is an irreparable, minute by minute, injury to First, Fourth, Fifth and Ninth Amendment rights. Being unable to plan for travel is an injury rather than something for the Defendant to celebrate as a sign of no urgency since there are no plans to travel. The Declarations by me and the Disciples Training School

leader, Youth With A Mission, Richmond, Virginia, testifies to the fact that my not having a passport is daily injuring many people besides myself, is a irreparable harm upon my travel liberties, and is impairing my right and duty to the free exercise of my global Christian evangelical ministry and to plan and prepare for the travel.   The harm of my daily exclusion of a passport is irreparable, and getting worse as each day progresses and nears my team's overseas departure date the beginning of February, 2025.

(b)   The likelihood of success on the basis of my non-lawyer skill set, I cannot say. The court however has the training and experience to discern that a passport will be coming as a result of this litigation if I had not demanded immediate relief.   The court can see where I have checked the necessary technical blocks that will cause me to ultimately prevail.   The court can see where the assistance of counsel can provide wise complaint amendment so the result of this litigation can be good law as well as a passport.   Because the crux of the Defendants case is reliance upon proof of no proof; from a mystery 8 FAM 303.2; the final appeal and passport denial of July 3, 2023, was based upon a clearly inapplicable provision of regulations; as well as the irrational imprisonment within the borders even though there is no contest to my citizenship or identity; among other things, I am likely to prevail substantially.

(c)   The Defendants offered no harm that my having a passport will exact upon them.

(d)   The public interest, the compelling interest of the Government, acting on behalf of the public, is the protection of my absolute rights which are reserved, being those things which I cannot sacrifice no matter how deeply I involve myself in civil society.   The public interest is to not use the police power of the government to obstruct the natural or civil liberties of any person without those persons having first being accused of a wrong, being giving notice of the accusation, having adversarial due process, and being convicted of the

wrong by a jury of their vicinage.  The Defendants' citation of those powers that the government has is to enforce its power against those people who are doing wrong not to injury those who are doing right.  "For rulers are not a terror to good works, but to evil. Do you want to be unafraid of the authority? Do what is good, and you will have praise from the same." Romans 13:3.  Getting a passport to me as soon as possible is in the public interest.  Obstructing in and delaying it is contrary to the public interest.

55.    The immediate emergency motion to immediately compel my passport should be granted.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

The Foregoing Plaintiff's Reply to Defendants' Brief in Opposition to Motion to Compel Passport Issuance, is submitted in good faith, by me, the Plaintiff.

12-20-2024

Abigail Carmichael Jordan
c/o 1748 Old Buckroe Road
Hampton, Virginia  23664
(757) 320-2220
abbyjordan@proton.me

# UNITED STATES DISTRICT COURT
## for the
## District of Columbia

| | | |
|---|---|---|
| Abigail Carmichael Jordan | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | Case No: 1:24-cv-01844 - TNM |
| v. | ) | |
| | ) | |
| Antony L. Blinken, *in his Official* | ) | |
| *capacity as Secretary of State, et al.,* | ) | |

### CERTIFICATE OF SERVICE

I, David Alan Carmichael, competent to testify and not a party to the action, served Abigail Carmichael Jordan's "PLAINTIFF'S REPLY TO DEFENDANT BRIEF IN OPPOSITION TO MOTION TO COMPEL PASSPORT ISSUANCE", and her "ABIGAIL CARMICHAEL JORDAN, PLAINTIFF, DECLARATION IN SUPPORT OF REPLY BRIEF OF DECEMBER 20, 2024" to the parties listed below at/via:

> Clerk of Court
> District Court of the United States
> United States Courthouse
> 333 Constitution Avenue NW
> Washington, D.C. 20001
> Priority mail, Cert. Mail #7020 3160 0001 9183 8784

> Thomas W. Duffey
> Assistant United States Attorney
> 601 D. Street, NW
> Washington, D.C. 20530
> (First class mail)

Under the penalty of perjury under the laws of the United States

David Alan Carmichael                    Date
1748 Old Buckroe Road
Hampton, Virginia 23664

RECEIVED
Mail Room

DEC 23 2024

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia