**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ABIGAIL CARMICHAEL JORDAN,<br><br>                Plaintiff,<br><br>    v.<br><br>MARCO RUBIO, *in his official capacity as U.S. Secretary of State*,<br>2201 C Street, N.W.<br>Washington, D.C.  20520;<br><br>UNITED STATES DEPARTMENT OF STATE,<br>2201 C Street, N.W.<br>Washington, D.C.  20520;<br><br>DARRYL HELLAMS, *in his official capacity as Deputy Director of Virginia's Office of Vital Records*,<br>2001 Maywill Street, Suite 101<br>Richmond, VA  23230;<br><br>SETH AUSTIN, *in his official capacity as Director & State Registrar of Virginia's Office of Vital Records*,<br>2001 Maywill Street, Suite 101<br>Richmond, VA  23230;<br><br>SURESH SOUNDARARAJAN, *in his official capacity as Chief Information Officer for the Virginia Department of Health*,<br>109 Governor Street<br>Richmond, VA  23219; and<br><br>KAREN SHELTON, *in her official capacity as Commissioner for the Virginia Department of Health*,<br>109 Governor Street<br>Richmond, VA  23219,<br><br>                Defendants. | Case No. 1:24-cv-01844-TNM |

**<u>AMENDED COMPLAINT</u>**

## INTRODUCTION

1.     This case arises from the U.S. Department of State's refusal to issue Plaintiff Abigail Carmichael Jordan a U.S. passport unless she violates her sincere religious convictions. Mrs. Jordan is a natural-born U.S. citizen and presented the State Department with ample evidence of that fact.  But the State Department refused to issue a passport unless Mrs. Jordan submitted a particular document from the State of Virginia certifying that she has no birth certificate on file. Mrs. Jordan could not obtain that document from Virginia without contradicting her religious faith, and Virginia has now stated it cannot provide that document at all because it has located a birth certificate for "Baby Girl Carmichael," even though Mrs. Jordan and her parents have raised repeated religious objections to the issuance or retention of a birth record for Mrs. Jordan.  And it would likewise violate Mrs. Jordan's religious convictions to claim that partial birth certificate as her own and submit it to the State Department as part of her passport application.

2.     Although Mrs. Jordan repeatedly apprised the State Department of her religious convictions, the Department never even acknowledged them, much less offered her an accommodation.  That is a textbook violation of the Religious Freedom Restoration Act ("RFRA"). The Department's actions also contravene the First Amendment, the statutory scheme governing passport adjudication, the Department's own regulations, and basic principles of administrative law codified in the Administrative Procedure Act ("APA").  Virginia officials, too, have infringed on Mrs. Jordan's constitutional rights by repeatedly insisting that she take actions antithetical to her religious beliefs, and that do not rationally serve any legitimate governmental purpose, as a condition of providing her any document that would clear the way to issuance of a passport.

3.     Mrs. Jordan was born in Hampton, Virginia on November 7, 1998.  She is committed to her Christian faith, which she learned from her parents, David and Leslie Carmichael.

1

That faith teaches Mrs. Jordan that her God-given identity is sacred, and that the allegiance she owes to her government as a citizen of the United States must be subordinate to her allegiance to her Creator. She therefore rejects allowing her identity to be enumerated—"marked," Revelation 13:16-18—by the government, such as through the assignment of a Social Security Number ("SSN") or the collection of her DNA or other forms of biometric data. Accordingly, even while it comes at great personal cost and inconvenience, it is Mrs. Jordan's firm religious conviction that she must not take any action that could lead to the issuance of an SSN for her. That includes not applying for a birth certificate due to the potential—indeed, likelihood—that the issuance of a birth certificate containing her full name and other identifying information will result in the issuance of an SSN. Consistent with these beliefs, Mrs. Jordan's parents did everything in their power to ensure that Mrs. Jordan did not receive a birth certificate when she was born, including withholding her first name from hospital officials. Now as an adult, Mrs. Jordan shares those same religious beliefs and has never sought a birth certificate or taken any other action that she was aware could result in the issuance of a birth certificate for her. But Mrs. Jordan recently learned from Virginia officials that, contrary to her and her parents' express wishes, Virginia has a birth certificate on file for "Baby Girl Carmichael."

4.    Mrs. Jordan's Christian faith also teaches her to spread the gospel to all nations. This cannot be done without a U.S. passport. But when Mrs. Jordan applied for a passport—which she first did nearly six years ago—her religious convictions repeatedly foundered against government bureaucracy. Mrs. Jordan submitted numerous documents proving beyond any reasonable doubt that she is a natural-born U.S. citizen. But the State Department insisted that she also submit an additional document from Virginia that could not plausibly further prove her citizenship or resolve any purported uncertainty on that score: "[a] statement from the appropriate

state registrar of records certifying that there is *no* birth record on file" for her.  (emphasis added).

The State Department has elsewhere called this document a "'letter of no record' certification,"

Dkt. 18, at 6 (citation omitted), and Virginia has called it a "Statement of No Record of Birth."

Mrs. Jordan refers to it here as a "Letter of No Record of Birth" or "Letter of No Record."

5.      When Mrs. Jordan tried to obtain a Letter of No Record of Birth from Virginia's

Office of Vital Records several years ago, she was unceremoniously rebuffed.  The Office refused

to provide her with that document—or even to run a search of its records—unless Mrs. Jordan

provided all the information that *would go onto* a birth certificate.  Mrs. Jordan was left concerned

that providing that information could be construed as a request *for* a birth certificate containing

that information, or could otherwise result in the creation of a stand-in record containing that same

information, either of which could result in the issuance of an SSN for her, in violation of her

sincere religious convictions.

6.      A cycle of bureaucratic intransigence followed.  Mrs. Jordan repeatedly informed

the State Department that her religious convictions prevented her from obtaining the Letter of No

Record in light of the prerequisites Virginia had established for obtaining such a Letter.  And to

dispel any conceivable doubt about her citizenship, she submitted yet additional evidence of that

fact to the Department.  Yet the Department refused to budge—it continued to insist that she submit

the Letter of No Record to obtain a passport, and it offered no accommodation for her religious

convictions or even *acknowledged* those convictions.  Mrs. Jordan also made additional attempts

to procure the Letter of No Record from Virginia's Office of Vital Records, to no avail.

7.      Four days ago (January 30, 2025), Mrs. Jordan was informed for the first time, in

response to an inquiry sent on January 13, 2025, that Virginia's Office of Vital Records *does* have

a birth certificate on file for "Baby Girl Carmichael," even though neither she nor her parents ever

sought a birth certificate for her due to their religious convictions, and even though she does not want one due to those same religious convictions (nor does any Virginia or federal law require her to have a birth certificate).  Despite being apprised of those religious convictions, Virginia refuses to purge the partial birth certificate from its records and continues to withhold a Letter of No Record from Mrs. Jordan.  Moreover, Virginia has stated that it will not issue Mrs. Jordan any document unless she first proves that the existing partial birth certificate pertains to her and applies to amend that partial certificate to add her first name.  Then, Virginia says, Mrs. Jordan could seek a copy of that amended birth certificate.  But Virginia has missed the point entirely:  forcing Mrs. Jordan to claim the existing partial birth certificate as her own and apply for an amended version of that certificate still imposes a substantial burden on her religious exercise.  Indeed, the substantial burden is now particularly stark because Virginia is asking Mrs. Jordan to augment its records with the final piece of identifying information (her first name) that would be needed to trigger issuance of an SSN.  Mrs. Jordan promptly informed counsel for the State Department and Secretary of State ("Federal Defendants") of these developments on January 31, 2025.

8.    These developments have put Mrs. Jordan into an impossible Catch-22 between two recalcitrant governments that have repeatedly failed to respect her religious convictions:  Virginia says it cannot provide the Letter of No Record that the State Department has arbitrarily insisted she provide, because Virginia has located a birth certificate for "Baby Girl Carmichael"— somehow created even though neither Mrs. Jordan nor her parents ever requested it due to their religious convictions.  Yet Virginia simultaneously refuses to purge that record, and the only document Virginia says it *would* produce (that would satisfy the State Department) is precisely what she seeks to avoid:  a birth certificate for her, which would directly violate her religious convictions by creating an unacceptable risk of causing an SSN to be generated.

9.     The Federal Defendants' refusal to provide any accommodation for Mrs. Jordan's religious convictions squarely violates RFRA.  It forces her into a Hobson's choice between violating her religious beliefs and forgoing a valuable government benefit, even though the Federal Defendants have no compelling interest in requiring additional evidence of Mrs. Jordan's citizenship beyond what she has already submitted (much less a Letter of No Record that would not be at all probative of her citizenship).  And at bare minimum, the Federal Defendants can obtain adequate additional assurance of Mrs. Jordan's citizenship without forcing her to take action that would violate her religious convictions.  For example, the Federal Defendants can seek directly from Virginia (as Virginia statutes and regulations expressly contemplate) the information that Virginia's Office of Vital Records already conveyed to Mrs. Jordan:  that the Office has on file a birth certificate for "Baby Girl Carmichael."  Although the existence of that purported record is extremely troubling to Mrs. Jordan given her and her parents' religious convictions, its existence should put to rest any remaining conceivable uncertainty the Federal Defendants might have:  If that document does not pertain to Mrs. Jordan, then Virginia has no birth certificate for her, and the Federal Defendants have no plausible basis to demand a Letter of No Record reciting that same fact.  If instead that partial birth certificate does pertain to Mrs. Jordan, if anything that is additional evidence of Mrs. Jordan's birth in Virginia (and thus U.S. citizenship).  Either way, the Federal Defendants have no legitimate basis to demand that Mrs. Jordan do or provide anything more to obtain a passport.

10.     The Federal Defendants' actions also violate the Free Exercise Clause, the APA, and other federal law.  The Federal Defendants do not apply the Letter of No Record requirement in a generally applicable or neutral manner.  Indeed, they have no legal authority under the relevant statutes and the State Department's own regulations to require passport applicants, much less

Mrs. Jordan, to submit that document at all.  And it is paradigmatic arbitrary and capricious agency behavior to deny a passport based on supposedly insufficient evidence of U.S. citizenship when the applicant submitted extensive documentary evidence of her birth in the United States and when the only item the Federal Defendants deemed missing is a document that could not be probative of U.S. citizenship.  The Federal Defendants also did not deign to explain why they insisted that Mrs. Jordan submit non-evidence of citizenship or why they refused to provide any religious accommodation.  Each of these violations entitles Mrs. Jordan to injunctive and declaratory relief against the Federal Defendants that clears the way to issuance of a U.S. passport.  In addition, 8 U.S.C. § 1503 authorizes this Court to make a *de novo* adjudication of Mrs. Jordan's citizenship and issue (at minimum) a declaration that she is a U.S. citizen and entitled to a passport.

11.    The Federal Defendants and Virginia could have easily worked together to ensure that Mrs. Jordan received a passport without infringing on her religious beliefs or legal rights, but instead their combined conduct has put her in an untenable Catch-22.  Accordingly, Mrs. Jordan has also brought claims against the Virginia officials ("Virginia Defendants") who have violated her rights, thus ensuring that the Court has before it all relevant parties and can order complete relief.  The Virginia Defendants have violated the Free Exercise Clause by refusing to purge the partial birth certificate and instead demanding that Mrs. Jordan apply for an amended version of that certificate, even though they purge birth certificates in other circumstances and know that her religious convictions prevent her from applying for any birth certificate.  And they have violated the Fourteenth Amendment's Due Process Clause because their apparent policies—refusing to issue a Letter of No Record or similar document despite having found no birth certificate for "Abigail Carmichael," and requiring Mrs. Jordan to apply for a birth certificate when she does not want one and is simply trying to prove she does not have one in her name—are not rationally

related to any legitimate purpose.  The Court should therefore enter injunctive and declaratory relief against the Virginia Defendants, including an order directing them to purge their records of the partial birth certificate and, if the Court determines that the Federal Defendants can lawfully require additional documentation for Mrs. Jordan's passport application, an order directing the Virginia Defendants to provide her (or the Federal Defendants) with a Letter of No Record or other appropriate documentation or information without forcing her to violate her religious convictions or to comply with irrational requirements, and without either the Virginia Defendants or the Federal Defendants doing anything that could directly or indirectly result in the issuance of an SSN for her.

## PARTIES

12.    Plaintiff Abigail Carmichael Jordan, née Abigail Hope Carmichael, is a natural-born United States citizen.  She was born in Hampton, Virginia, on November 7, 1998, and has resided in Virginia since her birth.

13.    Defendant Marco Rubio is the United States Secretary of State.  He is sued in his official capacity.

14.    Defendant United States Department of State is an executive department of the United States federal government that is headquartered in Washington, D.C.

15.    Defendant Darryl Hellams is the Deputy Director of Virginia's Office of Vital Records.  He is sued in his official capacity.

16.    Defendant Seth Austin is the Director & State Registrar of Virginia's Office of Vital Records.  He is sued in his official capacity.

17.    Defendant Suresh Soundararajan is the Chief Information Officer for Virginia's Department of Health.  He is sued in his official capacity.

18.     Defendant Karen Shelton is the Commissioner for Virginia's Department of Health. She is sued in her official capacity.

## JURISDICTION AND VENUE

19.     This action arises under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–2000bb-4; the First and Fourteenth Amendments to the U.S. Constitution; 8 U.S.C. § 1503(a); the Declaratory Judgment Act, 28 U.S.C. § 2201–2202; the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*; and the Mandamus Act, 28 U.S.C. § 1361. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

20.     The Federal Defendants' denial of Mrs. Jordan's passport application is final agency action subject to judicial review under the Administrative Procedure Act. 5 U.S.C. § 704.

21.     Venue is proper because the Secretary of State and State Department "resid[e] in this district," and "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district. 28 U.S.C. § 1391(e)(1). Venue is proper for Mrs. Jordan's claim under 8 U.S.C. § 1503(a) pursuant to the doctrine of pendent venue. *Beattie v. United States*, 756 F.2d 91, 101-03 (D.C. Cir. 1984), *abrogated on other grounds by Smith v. United States*, 507 U.S. 197 (1993).

## ALLEGATIONS

### I.     Legal Background

#### A.     Federal Law Does Not Authorize The State Department To Demand That Passport Applicants Submit A Letter Of No Record Of Birth

22.     The underlying criterion for entitlement to a U.S. passport is a person's allegiance to the United States. Congress directed the Secretary of State to "grant and issue passports" "under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a. In a section titled "Persons entitled to passport," Congress specified that "[n]o passport shall be granted or issued to or verified for any other persons than those owing allegiance,

whether citizens or not, to the United States." *Id.* § 212. Congress also delineated other specific restrictions on passport issuance—for example, "[t]he Secretary of State shall not issue a passport" to certain individuals convicted of sex trafficking involving minors. *Id.* § 212a(b)(1)(A). In addition, Congress reminded the Secretary of his First Amendment obligations: "A passport may not be denied issuance … because of any speech, activity, belief, affiliation, or membership, within or outside the United States, which, if held or conducted within the United States, would be protected by the first amendment to the Constitution of the United States." *Id.* § 2721.

23.    The State Department's longstanding view is that a passport applicant is generally deemed to "ow[e] allegiance" to the United States, 22 U.S.C. § 212, if he or she is "a U.S. citizen or a U.S. non-citizen national," 22 C.F.R. § 51.1; *see id.* § 51.2(a). Accordingly, the passport-adjudication process largely focuses on whether the applicant is a U.S. citizen or non-citizen national. The applicant generally "has the burden of proving that he or she is a U.S. citizen or non-citizen national," *id.* § 51.40, and "must provide documentary evidence" that he or she fits into one of those two categories, *id.* § 51.41.

24.    The Fourteenth Amendment, meanwhile, provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. That principle is also codified by federal statute. *See* 8 U.S.C. § 1401(a) ("The following shall be nationals and citizens of the United States at birth: (a) a person born in the United States, and subject to the jurisdiction thereof ….").

25.    To prove their citizenship, passport applicants "born in the United States"—like Mrs. Jordan—"generally must submit a birth certificate" that "show[s] a filing date within one year of the date of birth." 22 C.F.R. § 51.42(a). But "[i]f the applicant cannot submit" that

document, then "he or she must submit secondary evidence sufficient to establish to the satisfaction of the Department that he or she was born in the United States." *Id.* § 51.42(b). The regulations state that "[s]econdary evidence includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth," and "affidavits of persons having personal knowledge of the facts of the birth." *Ibid.*

26.    Nothing in that regulation requires passport applicants without a birth certificate to submit both "secondary evidence" of citizenship *and* a Letter of No Record of Birth. *See generally* 22 C.F.R. § 51.42. Notably, the regulation *used* to say that. Applicants were previously required to submit "a 'no record' certification from the official custodian of such birth records before secondary evidence may be considered." 22 C.F.R. § 51.43(b) (2007). But the Department removed that requirement nearly 20 years ago. *See* Final Rule, *Passports*, 72 Fed. Reg. 64,930, 64,936 (Nov. 19, 2007). That deletion aligns with congressional intent: Congress made allegiance to the United States the touchstone of entitlement to a passport, 22 U.S.C. § 212, and a Letter of No Record demonstrates nothing about a person's citizenship or allegiance to the United States. All it shows, in the Department's own words, is that "there is *no* U.S. birth certificate on file in the state you were born," U.S. Dep't of State, Bureau of Consular Affairs, *Citizenship Evidence* (Sept. 14, 2024), https://tinyurl.com/43yak8dv (emphasis added).

27.    The Department nonetheless still purports to have a policy of requiring this document from applicants who do not have a birth certificate. According to the Department, its policy manual states that applicants must provide "a 'letter of no record' certification" when "a birth certificate does not exist" for them. Dkt. 18, at 6 (quoting 8 Foreign Affairs Manual § 303.2-4(A)(b)). This section of the Foreign Affairs Manual—§ 303.2—is designated as

"UNAVAILABLE" on the Department's website.  U.S. Dep't of State, *Foreign Affairs Manual: Public*, https://tinyurl.com/cx4jp2sb (last visited Feb. 3, 2025).  Mrs. Jordan has repeatedly asked counsel for the Federal Defendants to provide this section of the manual because they are relying on it, but she has yet to receive it or an explanation of why it cannot be provided.  Accordingly, Mrs. Jordan's knowledge of this provision stems solely from the representations that the Federal Defendants have made about it in their filings in this case.  Moreover, the Department's website states that applicants who "cannot provide" a birth certificate filed "within one year of birth" must submit "[a] delayed birth certificate or a Letter of No Record, and … [e]arly public records or documents."  *Citizenship Evidence*, *supra* ¶ 26.

**B.    Virginia Law Authorizes Virginia's Office Of Vital Records To Provide A Letter Of No Record Or Other Information Upon Request By An Individual Or A Government Agency, And To Cancel Birth Records**

28.    Virginia's Registrar of Vital Records is a state official appointed by the Commissioner for Virginia's Department of Health, Va. Code § 32.1-251, and supervised by the Commissioner and the Department's Chief Information Officer, *id.* § 32.1-252(A); Va. Dep't of Health, *Organization Chart* (Jan. 10, 2025), https://tinyurl.com/2jyrcxkx.  Among other duties, the Registrar "[d]irect[s] and supervise[s] the system of vital records"; serves as the "custodian" of those records; "[d]irects, supervise[s] and control[s] the activities of all persons when pertaining to the operation of the system of vital records"; and "[d]evelop[s] and provide[s] a means for obtaining a social security number in conjunction with the issuance of a birth certificate."  Va. Code § 32.1-252(A2), (A3), (A10).

29.    By Virginia statute, the Office of Vital Records "shall, upon receipt of a written request, issue a certified copy of any vital record in the custody of the … Registrar."  Va. Code § 32.1-272(A).  Virginia regulations similarly provide that the Registrar "shall disclose data or issue certified copies of birth or death records or information when satisfied the applicant therefor

has a direct and tangible interest in the content of the record and that the information contained therein is necessary for the determination or protection of personal or property rights." 12 Va. Admin. Code § 5-550-470(A). A proper interest in "birth records" "may be evidenced by requests from the registrant" or the registrant's "legal representativ[e]" (including "[the] registrant's attorney"). *Id.* § 5-550-470(B)-(C).

30.     Virginia law also authorizes the Office of Vital Records to respond to information requests from other government agencies, including federal agencies. The relevant Virginia statute provides that "federal … agencies or persons in the conduct of their official duties may, upon request and payment of a reasonable fee, be furnished copies or other data from the system of vital records for statistical or administrative purposes." Va. Code § 32.1-272(D). Likewise, regulations provide that the Registrar "may disclose data from vital records to federal … agencies of government which request such data in the conduct of their official duties." 12 Va. Admin. Code § 5-550-490.

31.     In addition, regulations authorize the Office of Vital Records to "cancel" "a late or a delayed birth certificate" when the Registrar determines that the certificate "was obtained through fraud or misrepresentation." 12 Va. Admin. Code § 5-550-270.

## II.    Factual Background

### A.    Mrs. Jordan's Sincere Religious Convictions Preclude Her From Applying For A Birth Certificate Or Taking Any Other Action That Could Result In The Issuance Of A Social Security Number For Her

32.     Mrs. Jordan was born Abigail Hope Carmichael on November 7, 1998, in Hampton, Virginia, to David and Leslie Carmichael. Mrs. Jordan and her parents are devout Christians whose faith is central to their lives. This faith teaches Mrs. Jordan that God created her in His image and that her foremost responsibility is to live out her life completely surrendered to God. *See*, *e.g.*, Romans 12:1-2 ("I appeal to you therefore, brothers, by the mercies of God, to present

your bodies as a living sacrifice, holy and acceptable to God, which is your spiritual worship. Do not be conformed to this world, but be transformed by the renewal of your mind, that by testing you may discern … what is good and acceptable and perfect."). Although allegiance to her country is part of her duty to God, *see*, *e.g.*, 1 Peter 2:13-17, that allegiance is ultimately subordinate to the allegiance she owes to God. And because her identity belongs to God, it is her sincere religious conviction that allowing her identity to be enumerated by the government—such as through a Social Security Number (SSN)—or consenting to collection of her DNA or other biometric data for identification purposes, would be treating the government as if it were God.

33.     Moreover, for Mrs. Jordan, being "marked" with an SSN is reminiscent of what is mentioned in the Book of Revelation 13:16-18: "Also it causes all, both small and great, both rich and poor, both free and slave, to be marked on the right hand or the forehead, so that no one can buy or sell unless he has the mark, that is, the name of the beast or the number of its name." Mrs. Jordan has, indeed, had great difficulty in "buy[ing] or sell[ing]" without an SSN—for example, she has not been able to open a bank account or obtain a credit or debit card.

34.     To be sure, Mrs. Jordan understands that some documentation and information is reasonable to establish a person's identity. For example, she feels that giving her name and basic details about where she lives and who her parents are is generally appropriate as a means of distinguishing herself from others. She also believes that photographs are generally an acceptable form of identification because they do not provide her unique biological markers. But she objects to markers and enumerations that dehumanize and disregard that people are made in God's image. And she also objects to providing information about herself that she otherwise would normally provide (such as her parents' names) where doing so might lead the government to enumerate her identity.

13

35.    Based on these deeply rooted religious convictions, Mrs. Jordan firmly believes that she should not be enrolled in the Social Security program and should not have an SSN.  There is no federal law that requires anyone to be enrolled in Social Security or to have an SSN, but issuance of an SSN generally occurs automatically unless a person avoids taking the actions that trigger its issuance.  Mrs. Jordan's religious convictions thus prevent her from taking any action that could directly or indirectly result in the issuance of an SSN for her, including obtaining or applying for any kind of birth certificate, doing anything that could be construed as an application for a birth certificate, doing anything else that could result in the issuance of a birth certificate or stand-in record containing birth-certificate information, or claiming an existing birth certificate as her own.  Issuance of a birth certificate commonly leads to the issuance of an SSN.  For example, the Social Security Administration's ("SSA") "Enumeration at Birth" program is the general mechanism by which persons born in the United States obtain an SSN.  Soc. Sec. Admin., Bureau of Vital Statistics, *State Processing Guidelines for Enumeration at Birth*, at 4 (Nov. 2024), https://tinyurl.com/uut3unek.  The hospital collects a newborn's information as part of the birth-registration process and sends the information to the relevant state agency, which then forwards that information to the SSA for issuance of an SSN.  *Id.* at 6.

36.    Aware of the Enumeration at Birth program, Mrs. Jordan's parents deliberately did not apply for a birth certificate for their daughter when she was born, and indeed did everything in their power to ensure that a birth certificate was not issued for her.  A few days before his daughter was born, Mr. Carmichael notified hospital officials of his religious beliefs and asked them not to collect DNA or any other information about his daughter's identity that could then be transmitted to the SSA under the Enumeration at Birth program.  The hospital dishonored that request when it removed Mrs. Jordan from her hospital room in the middle of the night while Mrs. Carmichael

14

was sleeping and drew blood to record Mrs. Jordan's DNA.  Hospital staff also initially stated that Mrs. Jordan could not be taken home until the Carmichaels provided her name for birth records. Fearing the hospital would continue to disregard his requests and religious beliefs, Mr. Carmichael refused to provide a name, and the hospital relented.  As an adult, Mrs. Jordan has adopted her parents' religious convictions as her own; she thus has never sought a birth certificate and has done everything she can to ensure that Virginia does not issue her a birth certificate or otherwise generate a birth or stand-in record that could result in the issuance of an SSN for her.

37.    Accordingly, until Virginia's Office of Vital Records informed her counsel on January 30, 2025, that a birth certificate exists for "Baby Girl Carmichael," it was Mrs. Jordan's belief that a birth certificate had not been issued for her when she was born, and that the Office of Vital Records would have no record of her birth.

38.    Mrs. Jordan's objection to a birth certificate or other record containing birth-certificate information is a central part of her religious objection to enumeration.  Virginia explicitly requires its Registrar of Vital Records to "[d]evelop and provide a means for obtaining a social security number in conjunction with the issuance of a birth certificate."  Va. Code § 32.1-252(A10).  And "[a]ll [S]tates," including Virginia, participate in a data-exchange program with the SSA, which entails "electronic sharing of individual or aggregated Personally Identifiable Information (PII)" between state agencies and the SSA.  Soc. Sec. Admin., *Data Exchange*, https://tinyurl.com/32np72kc (last visited Feb. 3, 2025).  Indeed, Virginia law expressly authorizes its Office of Vital Records to "furnis[h]" data to federal agencies.  Va. Code § 32.1-272(D); *see* 12 Va. Admin. Code § 5-550-490; *supra* ¶ 30.  These provisions of Virginia law thus create a risk that an SSN will be generated for any individual with a birth record or birth-certificate information on file in Virginia, even when an SSN is not specifically requested.  That very thing happened to

one of Mrs. Jordan's family members:  the family member wrote "Religious Prohibition" on a birth-certificate form to avoid an SSN being issued for their child, but they received a Social Security Card in the mail anyway.

39.    Mrs. Jordan's Christian faith also calls her to "make disciples of all nations." Matthew 28:19-20 (the Great Commission).  Because of this calling, she has repeatedly sought a U.S. passport over the past six years.

**B.    The State Department Denies Mrs. Jordan's First Passport Application After She Is Unable To Obtain A Letter Of No Record Of Birth From Virginia's Office Of Vital Records**

40.    Mrs. Jordan first applied for a passport on April 4, 2019, when she was 20 years old.  Her application included a sworn letter explaining that she and her family "do not participate in Social Security or identify with its numbers for reasons of sincere and bona fide religion," and that her father "did not allow anyone to apply for a birth certificate for [her]" when she was born so that she would not be enrolled in Social Security.  A declaration from her father likewise explained that he and his wife were "very careful to not obtain a birth certificate for [their] daughter … or to allow anyone to enumerate her at birth with a[n] [SSN]."*

---

\* The sworn letter that Mrs. Jordan sent with her application and the enclosed declaration from her father were signed by her and her father, respectively, under penalty of perjury.  But she has only the unsigned versions of those documents and does not still have copies of the signed versions. Moreover, the Department did not return the original signed versions to her when it denied her application, even though the Department's October 22, 2019, denial letter stated that "[a]ny documents [Mrs. Jordan] submitted with [her] application [we]re enclosed."  Indeed, the Department's stated policy is to "return to the applicant evidence submitted in connection with an application for a passport" unless the Department deems retention of the evidence "necessary for anti-fraud or law enforcement or other similar purposes," 22 C.F.R. § 51.46—none of which applies in this case.  The Department has never asserted otherwise.

41.     To substantiate her U.S. citizenship in the absence of a birth certificate, Mrs. Jordan attached to her April 4, 2019, passport application several records demonstrating that she was born in Hampton, Virginia, and therefore is a natural-born U.S. citizen:

    a.  the declaration from her father, which avers that he was "a first-hand witness" to Mrs. Jordan's birth "in Hampton, Virginia … on November 7, 1998";

    b.  a certificate of Mrs. Jordan's 2005 baptism at Restoration Church, signed and verified by the church's pastor, which lists her date of birth as November 7, 1998;

    c.  a May 2006 Immunization Record from Virginia's Department of Health that lists all the immunizations Mrs. Jordan had received since her birth, and that lists her first immunization as having been received on November 7, 1998—the same day she was born;

    d.  a form, signed by her father two weeks after her birth, authorizing "Hampton Roads Pediatric Center" to treat Mrs. Jordan; and

    e.  homeschooling test results from 2012.

42.     On April 12, 2019, Mrs. Jordan received a letter response from the Customer Service Department at the State Department's National Passport Center. The letter identified three reasons why "[t]he evidence of U.S. citizenship or nationality [she] submitted [wa]s not acceptable." The first reason was that she was missing "[a] statement from the appropriate state registrar of records certifying that there is no birth record on file" for her. The Department advised that, "[i]f no formal birth record exists, [she] w[ould] receive a letter from the state registrar that will certify a search was made and no record was found." The Department did not identify any authority for requiring a Letter of No Record of Birth. The Department also asserted that Mrs. Jordan's baptismal certificate was "not complete" and that she needed to submit "public records preferably created within the first 5 years" of her life. The Department gave Mrs. Jordan 90 days to submit the requested documents.

43.     Seeking to oblige the Department's demand for a Letter of No Record, Mrs. Jordan and her father made an in-person visit to Virginia's Office of Vital Records in Richmond, Virginia. The following is Mrs. Jordan's best recollection of what transpired.  When she and her father arrived, she picked up a form entitled "Application For Certification Of A Vital Record" from a desk near the front door.  She filled out the "Requester Information" portion of the form, including her name, address, phone number, and signature, and in the area asking, "What Is Your Reason For Requesting This Certificate?", Mrs. Jordan wrote "certify no birth certificate for passport." She then handed her form to an employee at the Office, who stated that Mrs. Jordan had not fully filled out the form because she had not filled out the "Birth Certificate Information" section of the form.  That section asks the applicant to identify the "Number Of Copies" being requested, as well as the individual's name at birth, date of birth, place of birth, hospital of birth, race, sex, and parents' names.  Mrs. Jordan told the employee that, in her view, that section of the form did not apply to her because she believed she had no birth certificate and was not requesting a birth certificate, and that she instead simply wanted the Office to run a search of its records to confirm she had no birth certificate.  The employee responded that Mrs. Jordan needed to fill out the "Birth Certificate Information" section of the form for the Office to run the search.

44.     At this point, Mrs. Jordan started to become concerned that if she filled out all the information requested in the "Birth Certificate Information" section, her submission of the application form could be construed as a request for a birth certificate containing that information or could otherwise cause the Office to create a stand-in record for her containing that same information, which could then be passed along to the SSA for issuance of an SSN.  She asked to speak with a supervisor, who brought her and her father into a separate room.  Mrs. Jordan and her father explained to the supervisor that, for religious reasons, they had done everything in their

power to avoid the issuance of a birth certificate for Mrs. Jordan because of the possibility that it could lead to the issuance of an SSN. In response, the supervisor directed Mrs. Jordan's attention to a policy manual purportedly saying that the Office was not required to run a search of its records, and stated that the Office would be exercising its discretion not to run the search unless Mrs. Jordan filled out the "Birth Certificate Information" section of the form in its entirety.

45.    Based on these interactions with the employee and supervisor, Mrs. Jordan determined that her religious convictions prevented her from moving forward. She had made clear that she did not think she had a birth certificate and did not want to apply for one, yet the employee and supervisor insisted that she fill out a section of the form that, in her view, would not be filled out unless the applicant had or wanted a birth certificate. The wording of the form also caused her concern. For example, the "Birth Certificate Information" section asks for all the information that would go onto a person's birth certificate, asks the applicant to identify the "Number Of Copies" being requested, and has no "search only" option. She therefore remained concerned that filling out the "Birth Certificate Information" section of the form could be construed as an application for a birth certificate containing that information or would cause the Office of Vital Records to generate some other stand-in record containing all the same information that could then be transmitted to the SSA. And nothing the employee or supervisor said dispelled that concern. Because it would violate her sincere religious convictions to take any action that could be construed as an application for a birth certificate or could otherwise result in generation of an SSN for her, *see supra* ¶¶ 32-36, 38, she departed the Office without submitting the application form.

46.    Because Mrs. Jordan was unable to obtain a Letter of No Record from Virginia without violating her religious convictions, she had no way to satisfy the State Department's demand for that document. On October 22, 2019, the Department informed Mrs. Jordan that her

passport application was "denied" because "[t]he evidence [she] provided with [her] passport application [wa]s insufficient to establish [her] entitlement to a U.S. passport."  The letter also said that, if Mrs. Jordan still wanted a passport, she "need[ed] to reapply by executing a new application and paying the appropriate fees" again.

47.    Mrs. Jordan appealed this denial in a letter dated November 21, 2019.  She explained that she "went to" Virginia's Office of Vital Records "and attempted to apply for a search of their records," but "[t]hey refused to do the search unless [she] filed an application for a birth certificate."  Accordingly, her inability to provide the Letter of No Record was "due to the activity, belief, affiliation and membership of [her] and [her] family's Christian religion," and therefore the Department's denial violated "the First Amendment" and "22 USC § 2721."  She also contested the Department's "authority" to demand a Letter of No Record at all, and pointed out that she had already submitted a great deal of evidence to support her "statement of citizenship under penalty of perjury."  She asked the Department to "reverse [its] decision" or "[a]lternatively, [to] provide the avenue for [an] appeal."  Mrs. Jordan never received a response.

**C.    Mrs. Jordan Again Tries To Obtain A Letter Of No Record From Virginia**

48.    Mrs. Jordan married Nick Jordan in June 2021 and began serving fulltime as a missionary with Youth With A Mission (YWAM), a Christian organization whose mission is to make Jesus known to the world and to equip believers to fulfill the Great Commission.  In 2022, she renewed in earnest her efforts to obtain a passport.  On March 3, 2022, Mrs. Jordan wrote to the FOIA Officer at Virginia's Department of Health (the parent agency of the Office of Vital Records), asking the agency to "[p]lease provide the document that shows that a Virginia Birth Certificate does or does not exist for me, Abigail Hope Carmichael Jordan, in any of those names, born November 7, 1998."

49.     The Office of Vital Records responded to Mrs. Jordan on March 10, 2022.  The Office stated that it was "exempted from the [Virginia] Freedom of Information Act" but confirmed that, if it were "unable to locate a record after an extensive search and recheck, a Statement of No Record of Birth [would be] provided," and the Office would also "provide information regarding establishing a delayed birth registration."  The Office further asserted that "[a] review of [its] records d[id] not indicate that [Mrs. Jordan] ha[d] made a previous request with [the] [O]ffice," and it informed her that she needed to submit the same form she had already unsuccessfully tried to submit when she visited the Office in 2019.

**D.      The Department Again Refuses To Issue Mrs. Jordan A Passport Even Though She Makes Clear That She Cannot Submit A Letter Of No Record Due To Her Religious Convictions**

50.     On September 15, 2022, Mrs. Jordan applied for a passport a second time via a sworn letter sent to the State Department's Office of the Legal Adviser.  She explained that her previous application had been denied because she was unable to obtain a Letter of No Record from Virginia's Office of Vital Records, which had "only g[iven] [her] the option of filing an application for a birth certificate where [she] would put all the information necessary for them to issue a birth certificate."  She averred that "for reasons of Christian religion [she] do[es] not participate in Social Security" and feared that applying for a birth certificate "would result in the issuance of a[n] [SSN]," as had happened for the child of one of her family members.

51.     Mrs. Jordan submitted even more evidence of her natural-born U.S. citizenship with this passport application:

      a.   She provided notarized affidavits from her parents.  Both parents attested that they were live witnesses to Mrs. Jordan's birth on November 7, 1998, at Hampton General Hospital in Hampton, Virginia.  Both parents also attested that they had not provided Mrs. Jordan's name to the hospital and had not applied for a birth certificate or SSN for her.  Her father averred that they had taken these actions "[f]or reasons of [their] Christian religion."  His affidavit also stated that he had "witnessed the agent at the Virginia [O]ffice of Vital

Records in Richmond, Virginia, refuse to accept [Mrs. Jordan's] signed request for records search form because she did not also fill out the form that provided information to actually issue a birth certificate."

b.  Mrs. Jordan also submitted notarized affidavits from two family friends who, like her parents, averred to being live witnesses to Mrs. Jordan's birth "in the City of Hampton, Virginia, on Saturday, November 7, 1998."  Both affidavits were signed and notarized in 2015, well before Mrs. Jordan had begun seeking a passport.

c.  Mrs. Jordan re-submitted her baptismal certificate, this time with a cover letter from her pastor dated July 28, 2015.  The cover letter identified Restoration Church as located in Hampton, Virginia, and stated that, according to church "records," "[Mrs. Jordan] and [her parents] ha[d] continuously resided at 1748 Old Buckroe Road, Hampton, Virginia since before [Mrs. Jordan's] birth of November 7, 1998."  The pastor also affirmed the family's "strong convictions of religion," confirmed that Mrs. Jordan "ha[d] confessed Christ as Lord and ha[d] been baptized into his body of believers here at Restoration Church," and stated that "[Mrs. Jordan] [wa]s educated by her parents and they continually participate[d] in the home school cooperative ministry sponsored by [the] church."

d.  Mrs. Jordan also submitted a photocopy of the tag used by the hospital to identify her bassinet.  The tag was titled "I'm A Girl!" and identified the baby's last name as "Carmichael," the mother as "Leslie," the date of birth as "11-07-98," and other information, including Mrs. Jordan's time of birth and body measurements.  The tag also contained the words "Sentara Hospitals" (the organization that owns the hospital then known as Hampton General Hospital) and a logo for "Ross Pediatrics."

e.  In addition, Mrs. Jordan submitted a Virginia marriage license showing her marriage to Mr. Nicholas Jordan in 2021.  The license identified Mrs. Jordan's "Place of Birth" as "Virginia" and her date of birth as November 7, 1998.

f.  Mrs. Jordan also provided a photocopy of her Virginia driver's license.  She could not have received that license unless she proved to Virginia her "legal presence" in the United States, Va. Dep't of Motor Vehicles, *Driver License Eligibility Requirements*, https://tinyurl.com/4e89dxs3 (last visited Feb. 3, 2025), and she could have done that only by proving that she is a "U.S. citizen," since she is not (and has never been alleged to be) merely a "legal permanent resident of the U.S." or merely "legally authorized to be in the U.S. in an eligible immigration status," Va. Dep't of Motor Vehicles, *Virginia's Legal Presence Law*, https://tinyurl.com/56a5am7w (last visited Feb. 3, 2025).

g.  Finally, Mrs. Jordan submitted records of her past immunizations.

52.     On November 9, 2022, the State Department responded to Mrs. Jordan in a letter from the Customer Service Department of the Charleston Passport Center.  As with her previous application, the Department stated that "[t]he evidence of U.S. citizenship or nationality [she] submitted [wa]s not acceptable" because she had not submitted "[a] statement from the appropriate state registrar of records certifying that there is no birth record on file" for her.  The Department again cited no authority for this requirement, and the letter did not explain why the Department was still imposing this requirement even though Mrs. Jordan had explained her inability to obtain a Letter of No Record without violating her religious convictions.  Indeed, the Department's letter did not acknowledge Mrs. Jordan's religious convictions at all.  In a change from its letter of April 12, 2019, the Department identified no other reasons why Mrs. Jordan's evidence of citizenship was insufficient.  The letter did, however, note that Mrs. Jordan's application had not been "properly executed by the passport acceptance agent," and it asked her to "re-submit" her application and provide the Letter of No Record within 90 days.

53.     Mrs. Jordan remedied the processing issues by re-submitting her application—along with the evidence of citizenship she had previously submitted with her September 2022 application—on December 27, 2022.  This time, she also included a letter to the Department's Director of Passport Adjudication, Paul Peek.  In her letter, Mrs. Jordan asked Director Peek to grant her request for a passport and referred him to her previous sworn letter and her father's declaration, which had explained why she was unable to obtain a Letter of No Record.  She emphasized that the documents she had submitted should be "adequate for purposes of establishing that [she] is a citizen of the United States of America."

54.     Meanwhile, the Department's continued refusal to issue Mrs. Jordan a passport meant that she could not join her fellow ministers on a mission trip to Vietnam in early January 2023.

55.     On January 4, 2023, the Customer Service Department of the State Department's Charleston Passport Center sent Mrs. Jordan another letter.  Once again, the letter cited Mrs. Jordan's failure to submit a Letter of No Record as the sole reason why "[t]he evidence of U.S. citizenship or nationality [she] submitted [wa]s not acceptable."  And the Department, as before, did not even acknowledge Mrs. Jordan's religious convictions that prevented her from obtaining that document.  The Department demanded that she submit a Letter of No Record within 90 days.

56.     Mrs. Jordan responded to the Department on April 4, 2023.  She argued that the Department's continued refusal to issue her a passport was "unwarranted" and that the agency still had not "provide[d] any authority" to support its demand for a Letter of No Record.  She again referred the Department to her prior sworn letter explaining that Virginia's Office of Vital Records had refused to search its records "unless [she] filled out the other part of the form that would have [her] actually applying for a birth certificate."  And she argued that the Department "ha[d] no authority to use the passport as a means to coerce [her] to apply for a state birth certificate."  She also maintained that "[t]he affidavits from [her] parents" should by themselves be "sufficient" to prove her citizenship.  Mrs. Jordan asked the Department to issue her a passport or to inform her how she could submit an administrative appeal.

57.     The Department sent Mrs. Jordan a final denial letter on April 22, 2023, stating that she had not submitted "the requested information" (*i.e.*, the Letter of No Record) and that her application was "denied" because "[t]he evidence [she] provided with [her] passport application

[wa]s insufficient to establish [her] entitlement to a U.S. passport." The letter stated that if she still wanted a passport, she would need to "reapply by executing a new application and paying the appropriate fees" yet again.

58.    On June 11, 2023, Mrs. Jordan sent a letter to the State Department's Office of the Legal Adviser, asking for a hearing on her passport denial pursuant to 22 C.F.R. § 51.70. She argued that the evidence she had submitted was "sufficient" to establish her citizenship and that the Department had no authority "to use the right, benefit or privilege of a U.S. passport as a means of coercing [her] into applying for a … [b]irth [c]ertificate." Mrs. Jordan sent a similar letter to Director Peek.

59.    On July 3, 2023, the Department denied Mrs. Jordan's request for a hearing via a letter sent by the Department's Office of Adjudication. The Department explained that its April 22, 2023, letter had been "the final decision of the Department of State on [her] passport application." And it stated that Mrs. Jordan was "not entitled to an administrative hearing" under 22 C.F.R. § 51.70 because "the basis of the denial" was that she "did not provide sufficient documentary evidence of acquisition of U.S. citizenship pursuant to 22 C.F.R. § 51.43(b)(2)." That regulatory citation was inaccurate: the cited provision requires persons born "*outside* the United States" to "produce supporting documents … showing acquisition of U.S. citizenship." 22 C.F.R. § 51.43(b)(1)-(2) (emphasis added). Section *51.42* is the operative provision that governs applications for persons born "in the United States." *Id.* § 51.42(a). The Department further stated that "if appropriate," Mrs. Jordan "may seek to pursue an action in U.S. district court under 8 U.S.C. § 1503."

E.    **Mrs. Jordan Again Urges Virginia's Office Of Vital Records To Provide Her With A Letter Of No Record, And The Office Informs Her For The First Time Of A Birth Certificate For "Baby Girl Carmichael"**

60.    On January 13, 2025, Mrs. Jordan, this time through appointed counsel, sent a letter to Virginia's Office of Vital Records again asking it to provide her with a Letter of No Record of Birth.

61.    The letter provided the docket number for this case and recounted the relevant facts: Mrs. Jordan and her parents "hold sincere religious convictions that preclude them from applying for a birth certificate and from taking any other action that could result in the issuance of a[n] [SSN] for her"; the State Department has repeatedly refused to issue Mrs. Jordan a passport because she has not submitted a Letter of No Record; the Office of Vital Records previously refused to accept Mrs. Jordan's application for a Letter of No Record unless she filled out the "Birth Certificate Information" section of the application form; and "filling out that section of the form would violate her religious convictions because that action could be construed as an application or request for a birth certificate."

62.    The letter "request[ed] that [the] [O]ffice [of Vital Records] conduct a search of its records and, upon confirming that no birth record exists for Mrs. Jordan, provide her with a [Letter] of No Record of Birth."  Counsel enclosed the signed form that Mrs. Jordan had tried to submit in 2019, Mrs. Jordan's March 2022 correspondence with the Office of Vital Records, a photocopy of her Virginia driver's license, and a check for the $12 application fee.  The letter emphasized that, "due to Mrs. Jordan's religious convictions," the Office "must not take any action that would directly or indirectly result in the issuance of a birth certificate, delayed birth certificate, or any other birth record or stand-in record for Mrs. Jordan, or that would entail generation of a[n] [SSN] for Mrs. Jordan."

63.     Finally, the letter stated that, if the Office of Vital Records "decline[d] to provide a [Letter] of No Record of Birth," it should "confirm that position and explain the legal basis for [the] refusal."  Counsel warned that "if a [Letter] of No Record of Birth [wa]s not provided to Mrs. Jordan by January 27, 2025, [she] intend[ed] to pursue appropriate legal action."

64.     Neither Mrs. Jordan nor her counsel received any response to this letter until January 30, 2025, when the Deputy Director of the Office of Vital Records, Darryl Hellams, informed Mrs. Jordan's counsel by phone that the Office was declining to issue a Letter of No Record because the Office has a birth certificate on file with the name "Baby Girl Carmichael." Mr. Hellams declined to divulge what other information, if any, is on the birth certificate, citing confidentiality policies.  He further asserted that the Office could not purge the record and then issue a Letter of No Record because of a purported Office policy against purging birth records. Finally, he asserted that the Office could not provide Mrs. Jordan with documentation of any kind unless she applies to amend the existing partial birth certificate to add her first name to the certificate—which, he said, would require her to prove that the existing certificate pertains to her— and then applies for a copy of that thus-amended birth certificate.  *See also* Va. Code § 32.1-269 (statutory provisions governing amendment of vital records); 12 Va. Admin. Code §§ 5-550-440, -450, -460 (regulations governing same).

## III.    The Federal Defendants' Refusal To Issue Mrs. Jordan A Passport Is Unlawful In Numerous Respects

65.     The Federal Defendants' insistence that Mrs. Jordan submit a Letter of No Record or else forgo a passport has trampled on Mrs. Jordan's religious freedom, in violation of both the Religious Freedom Restoration Act (RFRA) and the Free Exercise Clause of the First Amendment. And even setting aside Mrs. Jordan's religious objections, she has a trove of evidence establishing her U.S. citizenship beyond any reasonable doubt, which entitles her to relief under 8 U.S.C.

§ 1503(a).   In addition, the passport denial is final agency action that contravenes the Administrative Procedure Act (APA) in multiple ways.  All these claims, both independently and together, entitle Mrs. Jordan to an order directing the Federal Defendants to issue her a passport, as well as other injunctive and declaratory relief.

### A.    The Federal Defendants' Conduct Violates Mrs. Jordan's Rights Under The Religious Freedom Restoration Act And The First Amendment

#### 1.    The Federal Defendants' Refusal To Accommodate Mrs. Jordan's Sincere Religious Convictions Is A Textbook Violation Of The Religious Freedom Restoration Act

66.    RFRA commands that the federal government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless it "demonstrates that application of the burden to the person … is in furtherance of a compelling governmental interest … and … is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)-(b).  "A person whose religious exercise has been burdened in violation of [RFRA] may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief."  *Id.* § 2000bb-1(c).

67.    The Federal Defendants' refusal to issue Mrs. Jordan a passport unless she procured a Letter of No Record of Birth—notwithstanding that Mrs. Jordan could not obtain that Letter without violating her sincere religious convictions, based on the requirements Virginia imposed on her—violated RFRA because it substantially burdened Mrs. Jordan's exercise of religion without serving any compelling governmental interest, nor was it the least restrictive means of advancing any such interest.

68.    Mrs. Jordan's sincere religious convictions preclude her from taking any action that could result in the issuance of an SSN for her, including applying for a birth certificate or taking any action that could be construed as an application for a birth certificate. *See supra* ¶¶ 32-36, 38.

Her religiously motivated "abstention" from those actions "fall[s] comfortably within [RFRA's] definition" of "exercise of religion." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (citation omitted). In addition, Mrs. Jordan's Christian faith calls her to spread the gospel to all nations of the Earth, which she cannot do without a passport. *See supra* ¶ 39.

69.    Because Mrs. Jordan was concerned that filling out the entirety of the "Birth Certificate Information" section of Virginia's form could be construed as an application for a birth certificate, she could not obtain the Letter of No Record without violating her religious convictions. *See supra* ¶¶ 43-45. In nonetheless insisting that Mrs. Jordan provide that document, the Federal Defendants substantially burdened her exercise of religion. That imposition forced Mrs. Jordan into the impossible "choice" of "violating [her] sincerely held religious beliefs" or else "forgo[ing]" a valuable government benefit that would allow her to fulfill her religious calling. *Hobby Lobby*, 573 U.S. at 706, 723.

70.    That substantial burden advanced no compelling interest. RFRA requires the Federal Defendants "to demonstrate that the compelling interest test is satisfied through application of the challenged [policy] 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006) (quoting 42 U.S.C. § 2000bb-1(b)). So it is not enough for the Federal Defendants to have a "general" interest in imposing certain requirements on passport applicants—instead, they must have a compelling interest in imposing those requirements on *Mrs. Jordan*. *Id.* at 431.

71.    The Federal Defendants cannot clear that hurdle. They do not have a compelling interest in requiring additional verification of Mrs. Jordan's citizenship because she has already produced abundant and undisputed evidence of her citizenship. And regardless, a Letter of No

Record does not advance that interest because it would prove nothing about Mrs. Jordan's citizenship or allegiance to the United States and therefore nothing about her entitlement to a passport.

72.    At a minimum, the Federal Defendants' insistence that Mrs. Jordan *herself* obtain the Letter of No Record from Virginia—even though she could not do so without violating her religious convictions—was not the least restrictive means of furthering any compelling interest. Clear alternatives were available to the Federal Defendants.  For example, they could have sought to obtain the Letter directly from the Office of Vital Records, without requiring Mrs. Jordan to take any action at all (much less action that would have violated her religious convictions).  Indeed, Virginia law authorizes the Office of Vital Records to respond to information requests from federal agencies.  Va. Code § 32.1-272(D); 12 Va. Admin. Code § 5-550-490.  Yet the Federal Defendants refused to make or offer any accommodation; indeed, they never even acknowledged Mrs. Jordan's religious convictions.

73.    The Federal Defendants' RFRA violation remains ongoing.  All along, the Federal Defendants have required that Mrs. Jordan submit either a birth certificate or a Letter of No Record as a condition of obtaining a passport.  But she has now been told that obtaining the Letter of No Record is impossible, and her religious convictions prevent her from applying for or procuring any kind of birth certificate (much less laying claim to one that exists despite her and her parents' religious objections).  Forcing Mrs. Jordan to choose between submitting a birth certificate (in violation of her religious convictions) and forgoing a passport imposes a substantial burden on her religious exercise.  And as explained, the Federal Defendants have no compelling interest in requiring any further verification of Mrs. Jordan's citizenship given the extensive evidence of citizenship she has already provided.  Nor does a birth-certificate requirement advance that interest

because, as this case well demonstrates, the Federal Defendants readily waive that requirement if the applicant provides other evidence of citizenship (which Mrs. Jordan has already done in abundance) and a Letter of No Record (a meaningless document that is not probative of an applicant's citizenship).

74.     In all events, forcing Mrs. Jordan to apply for and procure a birth certificate—in direct violation of her religious convictions—is not the least restrictive option available to the Federal Defendants.    For example, as Virginia law expressly contemplates, *see* Va. Code § 32.1-272(D); 12 Va. Admin. Code § 5-550-490, the Federal Defendants could simply obtain in writing from Virginia's Office of Vital Records the same information that the Office conveyed orally to Mrs. Jordan's counsel regarding the birth certificate for "Baby Girl Carmichael," without the Federal Defendants or the Virginia Defendants taking any action that could directly or indirectly result in the issuance of an SSN for Mrs. Jordan.  If that partial birth certificate does not pertain to Mrs. Jordan, then Virginia has no birth certificate for her, and the Federal Defendants have no possible need for a Letter of No Record reciting that same fact.  If instead that birth certificate for "Baby Girl Carmichael" does pertain to Mrs. Jordan, if anything that is additional evidence of Mrs. Jordan's birth in Virginia (and thus U.S. citizenship) and confirms what Mrs. Jordan and her father have told the Federal Defendants all along:  Mrs. Jordan was born in Virginia, but her parents refused to give her first name to the hospital due to their religious convictions.    Either way, the Federal Defendants have no legitimate basis to demand that Mrs. Jordan do or submit anything more to obtain a passport.

75.     Because the Federal Defendants have violated RFRA, Mrs. Jordan is entitled to "appropriate relief," 42 U.S.C. § 2000bb-1(c), including an accommodation for her religious

convictions and other injunctive and declaratory relief, *see Tanzin v. Tanvir*, 592 U.S. 43, 51 (2020).

### 2. The Federal Defendants' Refusal To Issue Mrs. Jordan A Passport Also Violates The Free Exercise Clause Of The First Amendment

76.    The Free Exercise Clause of the First Amendment prohibits "a government entity" from "burden[ing] [a person's] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable'" unless the government can pass "strict scrutiny," *i.e.*, "demonstrat[e] [that] its course was justified by a compelling [governmental] interest and was narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) (citations omitted).  "[N]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its [compelling] interest." *Tandon v. Newsom*, 593 U.S. 61, 63 (2021) (per curiam) (citation omitted).

77.    Congress has even codified the Federal Defendants' First Amendment obligations in the passport-adjudication context:  "A passport may not be denied issuance, revoked, restricted, or otherwise limited because of any speech, activity, belief, affiliation, or membership, within or outside the United States, which, if held or conducted within the United States, would be protected by the first amendment to the Constitution of the United States."  22 U.S.C. § 2721.

78.    The Federal Defendants' refusal to issue Mrs. Jordan a passport unless she submitted a Letter of No Record—despite knowing that Mrs. Jordan could not obtain that Letter without violating her sincere religious convictions—violated the Free Exercise Clause because it substantially burdened Mrs. Jordan's sincere religious practice pursuant to a policy that is not generally applicable or neutral and that the Federal Defendants did not apply in a way that was narrowly tailored in furtherance of a compelling interest.

79.    As explained, *see supra* ¶¶ 68-69, the Federal Defendants' insistence that Mrs. Jordan submit a Letter of No Record substantially burdened her religious exercise.  *See also Carson ex rel. O.C. v. Makin*, 596 U.S. 767, 778 (2022) (Free Exercise Clause forbids "not just outright prohibitions" but also "indirect coercion or penalties on the free exercise of religion"— for example, "exclud[ing] religious observers from otherwise available public benefits" (citation omitted)).

80.    The Federal Defendants imposed that burden on Mrs. Jordan pursuant to a policy that is neither generally applicable nor neutral.  A policy "is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'"  *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citation omitted).  A policy "also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."  *Id.* at 534.  Indeed, government action that treats "*any* comparable secular activity more favorably than religious exercise" is neither "generally applicable" *nor* "neutral."  *Tandon*, 593 U.S. at 62.

81.    The exact nature of the Letter of No Record policy is not fully known to Mrs. Jordan because the Federal Defendants refuse to provide the section of the State Department's manual that purportedly describes that policy.  *See supra* ¶ 27.  But based on the Federal Defendants' representations in this litigation, it appears they have a policy of requiring passport applicants who lack a birth certificate to provide a Letter of No Record as part of the applicant's "proof of identity and citizenship."  Dkt. 18, at 6, 10.  Even assuming the Federal Defendants have authority to impose that policy at all, *but see infra* ¶¶ 93-95, 97-98, they purport to wield broad "discretion" in deciding what evidence they deem "[s]ufficient" to establish an applicant's citizenship, Dkt. 18,

at 2, 6.  That claim to "discretion" necessarily "permit[s] the government to grant exemptions [to the Letter of No Record requirement] based on the circumstances underlying each [passport] application."  *Fulton*, 593 U.S. at 534.  This "mechanism for granting exceptions renders" the purported Letter of No Record policy "not generally applicable, regardless [of] whether any exceptions have been given."  *Id.* at 537.  And the Federal Defendants "may not refuse to extend that system" "of individual exemptions" "to cases of 'religious hardship' without compelling reason."  *Id.* at 534 (citation omitted).

82.    The Department's website further demonstrates that the Federal Defendants do not impose a Letter of No Record requirement in a generally applicable manner.  The website states that applicants without primary evidence of citizenship—*i.e.*, a birth certificate "issued within one year of birth"—must submit *either* "[a] delayed birth certificate or a Letter of No Record."  *Citizenship Evidence*, *supra* ¶ 26.  It thus appears that the Federal Defendants do not require a Letter of No Record from the subcategory of applicants who have a delayed birth certificate.  Yet the Department's own regulation does not distinguish between such applicants and applicants who have no birth certificate at all—in both cases, they are applicants who "cannot submit a birth certificate that meets the requirement of [22 C.F.R. § 51.42(a)]," 22 C.F.R. § 51.42(b), *i.e.*, a birth certificate with "a filing date within one year of the date of birth," *id.* § 51.42(a).  If the Federal Defendants were applying a Letter of No Record requirement in a generally applicable manner, they would require applicants with a delayed birth certificate to submit proof that they have no birth certificate issued within one year of birth.  Yet it appears they do not—and worse, there is a lack of neutrality as well, because the Federal Defendants decline to impose a Letter of No Record requirement even where the applicant, unlike Mrs. Jordan, has no religious objection to that document.  *See*, *e.g.*, *Mendez v. Blinken*, 2021 WL 4775629, at *2-4 (E.D. Wash. Oct. 13, 2021)

(passport applicant had only a birth certificate issued four years after birth, but no suggestion the State Department required her to submit a Letter of No Record alongside her "secondary evidence" of citizenship or that the applicant had any religious objection to a Letter of No Record).

83.    Because the Federal Defendants substantially burdened Mrs. Jordan's religious exercise pursuant to a requirement that is not generally applicable or neutral, their imposition of that requirement is subject to strict scrutiny. *Kennedy*, 597 U.S. at 525.  The Federal Defendants fail that standard:  they cannot show any compelling interest in requiring additional verification of Mrs. Jordan's citizenship because she has already produced copious evidence of her citizenship; a Letter of No Record does not advance that interest because it does nothing to verify a person's citizenship; and in any event requiring Mrs. Jordan herself to procure that document was not the least restrictive means of furthering any such interest. *See supra* ¶¶ 70-72.

84.    Moreover, like the Federal Defendants' RFRA violation, their First Amendment violation remains ongoing, and for essentially the same reasons. *See supra* ¶¶ 73-74.  Their policy of requiring passport applicants to submit either a birth certificate or a Letter of No Record is imposing a substantial burden on Mrs. Jordan's exercise of religion because she has been told that obtaining a Letter of No Record is now impossible, and obtaining a birth certificate would directly violate her religious convictions.  That policy is not generally applicable or neutral, at a minimum because the Federal Defendants claim to have broad discretion in determining what evidence an applicant must submit to obtain a passport.  And imposing that policy on Mrs. Jordan does not further any compelling interest:  the Federal Defendants have no compelling interest in requiring further evidence of Mrs. Jordan's citizenship given her extensive submissions on that score, and a birth-certificate requirement does not advance that interest because the Federal Defendants readily drop that requirement if the applicant submits other evidence of citizenship (as Mrs. Jordan has

done) and a Letter of No Record (which is not probative of citizenship). And at a bare minimum, less restrictive means are available—for example, the Federal Defendants could obtain in writing from Virginia's Office of Vital Records that the Office has a birth certificate on file for "Baby Girl Carmichael." That information alone proves either that Virgnia has no birth certificate that pertains to Mrs. Jordan (the same assurance a Letter of No Record would provide) or that Virginia does have a birth certificate that pertains to her (which is additional evidence of her U.S. citizenship). Either way, the Federal Defendants have no valid basis to continue withholding a passport from Mrs. Jordan.

85.    Because the Federal Defendants have violated Mrs. Jordan's rights under the Free Exercise Clause, she is entitled to injunctive and declaratory relief. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015).

86.    In addition, the Federal Defendants' violation of the Free Exercise Clause means that the passport denial contravenes the APA at least twice over. The First Amendment violation makes the denial "contrary to constitutional right, power, privilege, or immunity" and "not in accordance with law." 5 U.S.C. § 706(2)(A)-(B). And the denial is also "in excess of statutory jurisdiction, authority, or limitations" and "not in accordance with law," *id.* § 706(2)(A), (C), because it flouts Congress's command that passports "may not be denied issuance … because of any speech, activity, belief, affiliation, or membership, within or outside the United States" that is "protected by the first amendment to the Constitution," 22 U.S.C. § 2721. Accordingly, Mrs. Jordan is entitled to relief under the APA. 5 U.S.C. §§ 702, 706(1)-(2).

**B.    Mrs. Jordan Is Entitled To A Declaration Under 8 U.S.C. § 1503(a) That She Is A U.S. Citizen And Entitled To A Passport**

87.    Congress has provided that "any person … within the United States" who "claims a right or privilege as a national of the United States and is denied such right or privilege by any

department or independent agency, or official thereof, upon the ground that [she] is not a national of the United States, … may institute an action under [the Declaratory Judgment Act] against the head of such department or independent agency for a judgment declaring [her] to be a national of the United States."  8 U.S.C. § 1503(a).  Section 1503(a) thus "provides for judicial review of denial of any 'right or privilege' of citizenship, including invalidations of passports."  *L. Xia v. Tillerson*, 865 F.3d 643, 655 (D.C. Cir. 2017).  The Court's review is "de novo."  *Perez v. Brownell*, 356 U.S. 44, 47 n.2 (1958), *overruled on other grounds by Afroyim v. Rusk*, 387 U.S. 253 (1958); *accord Frank v. Rogers*, 253 F.2d 889, 891 (D.C. Cir. 1958).

88.    In the D.C. Circuit, "[t]he threshold showing required of a section 1503 plaintiff is minimal."  *L. Xia*, 865 F.3d at 656.  Mrs. Jordan "need only show *prima facie* evidence of citizenship."  *Ibid.*  Once she does so, "[t]he government would then be put to its burden to establish by 'clear, unequivocal, and convincing evidence' [Mrs. Jordan's] lack of entitlement to the disputed 'right or privilege' of citizenship."  *Ibid.* (quoting *Perez*, 356 U.S. at 47 n.2).

89.    Mrs. Jordan easily meets her burden because she has overwhelming evidence that she was born in Hampton, Virginia, and thus is a natural-born U.S. citizen.  *See*, *e.g.*, *supra* ¶¶ 41, 51.

90.    Conversely, the Secretary of State cannot meet his burden of establishing by clear, unequivocal, and convincing evidence that Mrs. Jordan is not a U.S. citizen.  Indeed, the Secretary has never disputed the authenticity of Mrs. Jordan's evidence or claimed that this evidence does not in fact establish her U.S. citizenship, much less has the Secretary offered any evidence suggesting that Mrs. Jordan is not a citizen.

91.    Mrs. Jordan is thus entitled to an order directing the Secretary of State to issue her a passport, or at minimum a declaration that she is a U.S. citizen and entitled to a passport.  *See*

28 U.S.C. §§ 2201–2202; *see also*, *e.g.*, *Torres v. Pompeo*, 2019 WL 573422, at *4 (N.D. Okla. Feb. 12, 2019); *Ramirez v. Clinton*, 2011 WL 2838173, at *5 (D. Minn. July 18, 2011).

### C.    The Federal Defendants' Refusal To Issue Mrs. Jordan A Passport Exceeded Their Statutory Authority And Was Arbitrary And Capricious

92.    Under the APA, a court must "compel agency action unlawfully withheld" and "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1), (2)(A), (C).

93.    The Federal Defendants' denial of Mrs. Jordan's passport application exceeds their statutory authority. The sole basis for the denial was Mrs. Jordan's inability to satisfy their Letter of No Record requirement. But the relevant statutes do not authorize the Federal Defendants to impose that requirement, much less on an applicant like Mrs. Jordan who asserts a sincere religious objection to that requirement and otherwise submits copious evidence demonstrating her U.S. citizenship beyond any reasonable dispute.

94.    Congress directed that a person's allegiance to the United States—whether demonstrated by a person's citizenship or status as a U.S. national—is the underlying criterion for entitlement to a U.S. passport. 22 U.S.C. § 212. A Letter of No Record is not probative of an applicant's citizenship—it is the *absence* of evidence of citizenship. If the Federal Defendants receive a Letter of No Record for Mrs. Jordan, they will have no greater assurance of her citizenship than they already have. It would simply confirm that although Mrs. Jordan was born in Virginia (as already proven by her evidence), Virginia has no birth record on file for "Abigail Carmichael" (as she has repeatedly told the Federal Defendants).

95.    Moreover, although Congress specified other disqualifying factors—for example, if the applicant has been convicted of sex trafficking involving minors, *see* 22 U.S.C. § 212a—

none of the statutory restrictions applies to an applicant who is unable to procure a Letter of No

Record (nor, of course, do any of those statutory restrictions otherwise apply to Mrs. Jordan).

"[W]hen Congress directs an agency to consider only certain factors in reaching an administrative

decision, the agency is not free to trespass beyond the bounds of its statutory authority by taking

other factors into account." *Lead Indus. Ass'n, Inc. v. EPA*, 647 F.2d 1130, 1150 (D.C. Cir. 1980).

At minimum, the Court should "decline to construe" the statutory scheme to impose a requirement

that would raise "difficult and sensitive questions" under the Free Exercise Clause, *NLRB v. Cath.*

*Bishop of Chi.*, 440 U.S. 490, 507 (1979); *see supra* ¶¶ 78-85, particularly because Congress itself

admonished the State Department not to violate First Amendment rights when adjudicating

passport applications, *see* 22 U.S.C. § 2721.

      96.    The passport denial is otherwise arbitrary and capricious and not in accordance with

law for at least three reasons.

      97.    *First*, the Department's own regulations do not authorize the Letter of No Record

requirement. *Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C.

Cir. 2014) ("an agency action may be set aside as arbitrary and capricious if the agency fails to

'comply with its own regulations'" (citation omitted)). The regulations state that, if a passport

applicant "cannot submit a birth certificate that" "show[s] a filing date within one year of the date

of birth," the applicant "must submit secondary evidence sufficient to establish to the satisfaction

of the Department that he or she was born in the United States." 22 C.F.R. § 51.42(a)-(b). This

provision says nothing about a Letter of No Record requirement, which cannot do anything to

"establish" a person's citizenship. Notably, the Department did previously impose this

requirement in its regulations, *see* 22 C.F.R. § 51.43(b) (2007), but then deleted it nearly 20 years

ago, *see* 72 Fed. Reg. at 64,936.

98.     Moreover, like the statutory scheme, the Department's regulatory scheme focuses on whether the applicant's evidence demonstrates that he or she is a U.S. citizen or national, *see, e.g.*, 22 C.F.R. §§ 51.1, 51.2(a), 51.42, 51.43, rather than on whether the applicant can submit documents that would suggest the opposite. And, again like the statutory scheme, the regulatory restrictions that extend beyond citizenship—for example, the Department forbids itself from issuing passports to certain individuals convicted of federal drug-trafficking offenses, *id.* § 51.61(a)—have nothing to do with a Letter of No Record (and of course do not otherwise apply to Mrs. Jordan). At minimum, the Court should not read the Department's regulatory scheme to authorize a requirement that would raise serious problems under the Free Exercise Clause. *Cf. U.S. Dep't of Air Force v. Fed. Labor Relations Auth.*, 952 F.2d 446, 452 n.6 (D.C. Cir. 1991); *Coal River Energy, LLC v. U.S. Dep't of the Interior*, 931 F. Supp. 2d 64, 71 (D.D.C. 2013).

99.     *Second*, the passport denial was unreasonable and irrational. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise"). The Federal Defendants stated that Mrs. Jordan had "not provide[d] sufficient documentary evidence of … U.S. citizenship" because she did not submit a Letter of No Record. But Mrs. Jordan submitted abundant evidence of her U.S. birth and thus her citizenship, none of which has ever been disputed, and which collectively establishes beyond any reasonable doubt that Mrs. Jordan is a natural-born U.S. citizen. Given all that evidence, it is irrational to deem Mrs. Jordan's evidence insufficient because she did not *also* submit a document that could not be probative of her

citizenship.  It was also unreasonable for the Federal Defendants not to make an accommodation for Mrs. Jordan's religious convictions.

100.    *Third*, the Federal Defendants failed to provide an adequate explanation of their decision.  *State Farm*, 463 U.S. at 43 (agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" (citation omitted)); *FEC v. Rose*, 806 F.2d 1081, 1088 (D.C. Cir. 1986) ("[A]n agency action accompanied by an inadequate explanation constitutes arbitrary and capricious conduct.").  The Federal Defendants said only that Mrs. Jordan had not provided sufficient evidence of citizenship.  They did not explain why Mrs. Jordan's copious evidence of citizenship was not enough, nor did they give any reason why a Letter of No Record would be relevant to Mrs. Jordan's citizenship or otherwise necessary for issuance of the passport.  They also did not explain why they were unable to provide or offer an accommodation for Mrs. Jordan's religious convictions.  Indeed, the Federal Defendants never even *acknowledged* her religious beliefs, despite her repeated reminders that she was unable to obtain the Letter of No Record because of those beliefs.

101.    Because the Federal Defendants' decision to deny Mrs. Jordan a passport violates the APA, the Court should hold the denial unlawful, set it aside, and vacate it; order the Federal Defendants to issue Mrs. Jordan a passport; and declare that she is a U.S. citizen and entitled to a passport.  5 U.S.C. §§ 702, 706(1)-(2).

## IV.    The Virginia Defendants' Refusal To Issue Mrs. Jordan A Letter Of No Record Also Violates Her Constitutional Rights

102.    Although Mrs. Jordan maintains that the Federal Defendants cannot lawfully require a Letter of No Record or any additional evidence of her citizenship, this litigation could have been avoided if the Virginia Defendants had not repeatedly refused to provide her with documentation that would clear the way to issuance of a passport.  For several years, the Virginia

Defendants claimed they could not run a search of their records at all unless Mrs. Jordan provided all the information that would go onto her birth certificate—an action that would violate her religious convictions. That apparently was never a real requirement, for they have now searched their records without Mrs. Jordan providing all that information. Yet they continue to disregard her religious convictions and impose irrational requirements. They now assert that the only way they can provide Mrs. Jordan with any document that could satisfy the State Department is if she claims the birth certificate for "Baby Girl Carmichael" as her own, applies for an amended version of that certificate, and then requests a copy of that amended certificate. But Mrs. Jordan's religious convictions prevent her from applying for any birth certificate, much less claiming any existing certificate as her own and amending it to include the final piece of information (her first name) that would be needed to trigger the issuance of an SSN for her. Instead of forcing her to violate her religious convictions, the Virginia Defendants could, for example, simply provide Mrs. Jordan with a Letter of No Record or similar document—whether after purging the partial birth certificate or simply doing so because they have run a search of their records and have apparently found no exact match for her. In refusing to undertake these or other alternatives, the Virginia Defendants have violated Mrs. Jordan's rights.

### A.    The Virginia Defendants' Conduct Violates The Free Exercise Clause Of The First Amendment

103.    The Free Exercise Clause has been incorporated through the Fourteenth Amendment as a restriction on state officials. *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940). The Virginia Defendants' refusal to purge the partial birth certificate they located—while simultaneously demanding that Mrs. Jordan claim the certificate as her own and request an amended version of that certificate—violates the Free Exercise Clause because it substantially burdens Mrs. Jordan's religious exercise pursuant to a policy that is not generally applicable or

neutral, does not advance any compelling interest, and is not the least restrictive means of advancing any such interest.

104.    Mrs. Jordan's sincere religious convictions prevent her from applying for a birth certificate or taking any other action that could result in the issuance of an SSN for her. *See supra* ¶¶ 32-36, 38. Her "abstention" from this conduct is an "exercise of religion" that is protected by the First Amendment. *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990). She therefore strongly objects to having any birth certificate on file, and indeed it is highly troubling that a partial birth certificate apparently exists for her given that her and her parents have, since her birth, consistently objected to issuance of a birth certificate for her due to their religious convictions. The Virginia Defendants have now doubled down on their disregard for Mrs. Jordan's religious beliefs by refusing to purge the partial birth certificate (and thus refusing to issue her a Letter of No Record) and instead demanding that she apply for an amended version of that certificate—precisely what would violate her religious convictions, as she has repeatedly told them. This imposes a substantial burden on Mrs. Jordan's exercise of religion because it forces her into the impossible "choice" of "violating [her] sincerely held religious beliefs" or else "forgo[ing]" a passport. *Hobby Lobby*, 573 U.S. at 706, 723.

105.    The Virginia Defendants are imposing this burden pursuant to a purported policy that birth records are permanent and cannot be purged. But any such policy is not generally applicable or neutral. The Office of Vital Records *does* "cancel" birth certificates when a person "obtain[s] [them] through fraud or misrepresentation," 12 Va. Admin. Code § 5-550-270, yet the Office refuses to cancel or otherwise purge a birth certificate when a devout Christian makes clear that she does not want and never authorized a birth certificate due to her religious beliefs, and indeed where a partial birth certificate exists in the first place only because someone else (such as

the hospital where Mrs. Jordan was born, and possibly the Office of Vital Records as well) apparently caused a birth certificate to be generated for her despite the religious beliefs of Mrs. Jordan's parents.  That is the opposite of a generally applicable and neutral scheme.

106.    Because the Virginia Defendants have substantially burdened Mrs. Jordan's religious exercise pursuant to a policy that is not generally applicable or neutral, strict scrutiny applies.  The Virginia Defendants cannot satisfy that standard because they cannot identify a compelling interest in refusing to purge the partial birth certificate when Mrs. Jordan has made clear that she does not want a birth certificate.  There is no law that requires Mrs. Jordan to have a birth certificate, and although not having one comes at great cost and personal inconvenience—as this case well illustrates—that is her religious conviction.  Indeed, the Virginia Defendants' willingness to purge birth certificates in *some* circumstances "undermines [their] asserted interests" in the permanence of birth records.  *Fulton*, 593 U.S. at 534.

107.    Even if the Virginia Defendants have a compelling interest in the permanence of the unwanted partial birth record, simultaneously refusing to provide *any* documentation that would clear the way to issuance of a passport has no connection to that interest, much less is it the least restrictive means of advancing that interest.  The Virginia Defendants could, for example, simply issue a Letter of No Record or similar document for Mrs. Jordan based on the fact that they conducted a search of their records and apparently located only a birth certificate for "Baby Girl Carmichael," not "Abigail Carmichael."

108.    Because the Virginia Defendants have violated Mrs. Jordan's rights under the Free Exercise Clause, she is entitled to injunctive and declaratory relief.  *See Ex parte Young*, 209 U.S. 123, 166-67 (1908).

### B.     The Virginia Defendants' Requirements Are Irrational And Therefore Violate Due Process

109.    The Due Process Clause of the Fourteenth Amendment forbids state officials from imposing policies that are "not a rational means of advancing a legitimate government purpose." *Sanchez v. Office of State Superintendent of Educ.*, 45 F.4th 388, 395-96 (D.C. Cir. 2022) (citation omitted).

110.    The Virginia Defendants fail that standard.  Their apparent policies of (1) refusing to issue a Letter of No Record or similar document even though they apparently did not locate a birth certificate that was an exact match for Mrs. Jordan, and (2) requiring Mrs. Jordan to apply for an amended version of a partial birth certificate that was created without authorization from Mrs. Jordan or her parents, when she has repeatedly made clear she does not want any birth certificate, and is simply trying to prove that she does not have one in her name, are not rationally related to any legitimate governmental purpose.  State officials "cannot hope to survive *rational* basis review by resorting to irrationality."  *Merrifield v. Lockyer*, 547 F.3d 978, 991 (9th Cir. 2008).

111.    Because the Virginia Defendants have violated Mrs. Jordan's rights under the Due Process Clause of the Fourteenth Amendment, she is entitled to injunctive and declaratory relief. *See Ex parte Young*, 209 U.S. at 166-67.

**COUNT I**
**Religious Freedom Restoration Act**
**(Against All Federal Defendants)**

112.    Mrs. Jordan incorporates the above allegations by reference.

113.    The Federal Defendants' refusal to issue Mrs. Jordan a passport violates RFRA because it imposes a substantial burden on Mrs. Jordan's exercise of religion and is not the least restrictive means of furthering any compelling governmental interest.

114.    Accordingly, the Federal Defendants are required to accommodate this substantial burden, and Mrs. Jordan is otherwise entitled to injunctive and declaratory relief against the Federal Defendants, including an order directing them to issue her a passport.

## COUNT II
### Free Exercise Clause Of The First Amendment
### (Against All Federal Defendants)

115.    Mrs. Jordan incorporates the above allegations by reference.

116.    The Federal Defendants' refusal to issue Mrs. Jordan a passport violates the Free Exercise Clause of the First Amendment because it substantially burdens Mrs. Jordan's exercise of religion pursuant to a policy that is not generally applicable or neutral, and that refusal is not narrowly tailored in furtherance of any compelling governmental interest.

117.    Accordingly, Mrs. Jordan is entitled to injunctive and declaratory relief against the Federal Defendants, including an order directing the Federal Defendants to issue Mrs. Jordan a passport.

## COUNT III
### 8 U.S.C. § 1503(a)
### (Against Secretary of State)

118.    Mrs. Jordan incorporates the above allegations by reference.

119.    Mrs. Jordan's evidence is more than sufficient to make a *prima facie* showing that she is a U.S. citizen, and the Secretary of State cannot rebut that showing with clear, unequivocal, and convincing evidence.

120.    Accordingly, Mrs. Jordan is entitled to an order directing the Secretary of State to issue her a passport and an order declaring that she is a U.S. citizen and is entitled to a passport.

## COUNT IV
### Administrative Procedure Act – Unconstitutional Agency Action
### (Against All Federal Defendants)

121.    Mrs. Jordan incorporates the above allegations by reference.

122.    The Federal Defendants' denial of Mrs. Jordan's passport application was final agency action "contrary to constitutional right, power, privilege, or immunity" and "not in accordance with law" because it violated her rights under the First Amendment.  5 U.S.C. § 706(2)(A)-(B).

123.    Accordingly, Mrs. Jordan is entitled to an order holding the passport denial unlawful, setting it aside, and vacating it; an order directing the Federal Defendants to issue Mrs. Jordan a passport; and a declaration that she is a U.S. citizen and entitled to a passport.

**COUNT V**
**Administrative Procedure Act – Agency Action In Excess Of Statutory Authority**
**(Against All Federal Defendants)**

124.    Mrs. Jordan incorporates the above allegations by reference.

125.    The Federal Defendants' denial of Mrs. Jordan's passport application was final agency action "in excess of statutory jurisdiction, authority, or limitations" and "not in accordance with law."  5 U.S.C. § 706(2)(A), (C).

126.    The sole basis for the Federal Defendants' decision—Mrs. Jordan's inability to submit a Letter of No Record—was not a valid basis under the statutory scheme for denying her a passport.

127.    The passport denial also contravenes 22 U.S.C. § 2721 because the denial violates Mrs. Jordan's rights under the First Amendment.

128.    Accordingly, Mrs. Jordan is entitled to an order holding the passport denial unlawful, setting it aside, and vacating it; an order directing the Federal Defendants to issue Mrs. Jordan a passport; and a declaration that she is a U.S. citizen and entitled to a passport.

**COUNT VI**
**Administrative Procedure Act – Arbitrary & Capricious Agency Action**
**(Against All Federal Defendants)**

129.    Mrs. Jordan incorporates the above allegations by reference.

130.    The Federal Defendants' denial of Mrs. Jordan's passport application is final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

131.    The sole basis for the Federal Defendants' decision—Mrs. Jordan's inability to submit a Letter of No Record—was not a valid basis under the regulatory scheme for denying her a passport.

132.    The passport denial is unreasonable and irrational because Mrs. Jordan has already established her U.S. citizenship beyond any reasonable dispute and because a Letter of No Record of Birth would not give the Federal Defendants any additional evidence of citizenship.  It was also unreasonable for the Federal Defendants to deny a passport without attempting to procure a Letter of No Record by other means.

133.    The passport denial is inadequately explained because the Federal Defendants did not explain why Mrs. Jordan's evidence of citizenship was insufficient, what a Letter of No Record would add to her evidence, or why they were unable to provide or offer an accommodation for Mrs. Jordan's religious convictions.

134.    Accordingly, Mrs. Jordan is entitled to an order holding the passport denial unlawful, setting it aside, and vacating it; an order directing the Federal Defendants to issue Mrs. Jordan a passport; and a declaration that she is a U.S. citizen and entitled to a passport.

### COUNT VII
### Mandamus Act
### (Against All Federal Defendants)

135.    Mrs. Jordan incorporates the above allegations by reference.

136.    The Mandamus Act vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

137.    Here, the Federal Defendants have a duty to issue Mrs. Jordan a passport because she has demonstrated that she is a U.S. citizen, and at minimum they have a duty to accommodate Mrs. Jordan's sincere religious convictions.

138.    Accordingly, Mrs. Jordan is entitled to a writ of mandamus compelling the Federal Defendants to issue her a passport or at minimum provide her an accommodation.

## COUNT VIII
### Free Exercise Clause Of The First Amendment
### (Against All Virginia Defendants)

139.    Mrs. Jordan incorporates the above allegations by reference.

140.    The Virginia Defendants' refusal to purge the birth certificate for "Baby Girl Carmichael" even though it violates Mrs. Jordan's religious convictions to have any birth certificate—and their simultaneous insistence that she claim the partial birth certificate as her own and apply for an amended version of that certificate, also in violation of her religious convictions— violates the Free Exercise Clause of the First Amendment because it substantially burdens Mrs. Jordan's exercise of religion pursuant to a policy that is not generally applicable or neutral, and is not narrowly tailored in furtherance of any compelling governmental interest.

141.    Accordingly, Mrs. Jordan is entitled to injunctive and declaratory relief against the Virginia Defendants, including an order directing them to purge the partial birth certificate and to provide her or the Federal Defendants with a Letter of No Record.

## COUNT IX
### Due Process Clause Of The Fourteenth Amendment
### (Against All Virginia Defendants)

142.    Mrs. Jordan incorporates the above allegations by reference.

143.    The Virginia Defendants' refusal to issue Mrs. Jordan a Letter of No Record or similar document even though they found no birth certificate that was an exact match for her, and their demand that she claim the partial birth certificate as her own and apply for an amended

version of that certificate, violate the Due Process Clause of the Fourteenth Amendment because those requirements are not rationally related to any legitimate governmental purpose.

144.    Accordingly, Mrs. Jordan is entitled to injunctive and declaratory relief against the Virginia Defendants, including an order directing them to provide her or the Federal Defendants with a Letter of No Record.

## PRAYER FOR RELIEF

145.    Mrs. Jordan prays that this Court issue injunctive, declaratory, and other relief, including:

 a. A permanent injunction ordering the Federal Defendants to issue a passport to Mrs. Jordan, or to provide her with an appropriate religious accommodation;

 b. A permanent injunction prohibiting the Federal Defendants from denying Mrs. Jordan a religious accommodation or otherwise violating her federal statutory and constitutional rights;

 c. A declaration that the Federal Defendants' refusal to issue Mrs. Jordan a passport violates her federal statutory and constitutional rights and the APA;

 d. An order holding the passport denial unlawful and setting aside and vacating the denial;

 e. A declaration that Mrs. Jordan is a U.S. citizen and is entitled to a passport;

 f. A permanent injunction ordering the Virginia Defendants to purge the birth certificate for "Baby Girl Carmichael" and otherwise to purge their records of Mrs. Jordan's name, address, parents' names, or other information that is particularly associated with her;

g.  A permanent injunction prohibiting the Virginia Defendants from violating Mrs. Jordan's federal constitutional rights;

h.  A declaration that the Virginia Defendants have violated Mrs. Jordan's federal constitutional rights; and

i.  A permanent injunction prohibiting the Federal Defendants and the Virginia Defendants from taking any action that could directly or indirectly result in the issuance of a birth certificate, delayed birth certificate, amended birth certificate, or any other birth record or stand-in record for Mrs. Jordan, or that could otherwise result in the generation of a U.S. Social Security Number for her.

146.  Mrs. Jordan further prays that, if this Court determines that the Federal Defendants can lawfully require additional documentation or information before issuing Mrs. Jordan a passport, the Court issue injunctive, declaratory, and other relief, including:

a.  A permanent injunction ordering the Virginia Defendants to provide Mrs. Jordan or the Federal Defendants with that additional documentation or information, such as a Letter of No Record, without forcing Mrs. Jordan to violate her religious convictions or to comply with irrational requirements.

147.  Mrs. Jordan further prays that this Court:

a.  Award Mrs. Jordan costs and reasonable attorneys' fees as appropriate; and

b.  Grant Mrs. Jordan such further and other relief as the Court deems just and proper.

Dated:  February 3, 2025

Respectfully submitted,

*/s/ Robert A. Batista*

Robert A. Batista (D.C. Bar No. 1618522)
   *Counsel of Record*
Jonathan C. Bond (D.C. Bar No. 1003728)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036-4504
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
RBatista@gibsondunn.com
JBond@gibsondunn.com

*Counsel for Plaintiff*